1

—————2:18-cr-055-APG-GWF - August 8, 2018—————

1          UNITED STATES DISTRICT COURT

2              DISTRICT OF NEVADA

3

4  UNITED STATES OF AMERICA,        )
                                    )  Case No. 2:18-cr-055-APG-GWF
5              Plaintiff,           )
                                    )  Las Vegas, Nevada
6       vs.                         )  Wednesday, August 8, 2018
                                    )  Courtroom 6C, 9:33 a.m.
7  CEMONE CHAMPAGNE LEWIS,          )
                                    )  CHANGE OF PLEA HEARING
8          Defendant.               )
                                    )  C E R T I F I E D   C O P Y
9  _____ )

10

11          REPORTER'S TRANSCRIPT OF PROCEEDINGS

12       BEFORE THE HONORABLE ANDREW P. GORDON,
              UNITED STATES DISTRICT JUDGE

13

14

15  APPEARANCES:

16  For the Plaintiff:

17       UNITED STATES ATTORNEY'S OFFICE
         BY:  PHILLIP N. SMITH, JR., AUSA
18       501 Las Vegas Boulevard South, Suite 1100
         Las Vegas, NV 89101
19       (702) 388-6336

20  (Appearances continued on Page 2)

21  COURT REPORTER:

22       Heather K. Newman, RPR, CRR, CCR #774
         United States District Court
23       333 Las Vegas Boulevard South, Room 1334
         Las Vegas, Nevada 89101
24       (702) 471-0002 or HN@nvd.uscourts.gov

25  Proceedings reported by machine shorthand, transcript produced
    by computer-aided transcription.

2:18-cr-055-APG-GWF - August 8, 2018

1    APPEARANCES CONTINUED:

2    For the Defendant:

3          FEDERAL PUBLIC DEFENDER'S OFFICE
           BY:  RAQUEL LAZO, AFPD
4               MARGARET W. LAMBROSE, AFPD
           411 East Bonneville Avenue, Suite 250
5          Las Vegas, NV 89101
           (702) 388-6577

6

7    Also present:

8          Kelly Bowen
           United States Pretrial Services

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

2:18-cr-055-APG-GWF - August 8, 2018

1      LAS VEGAS, NEVADA; WEDNESDAY, AUGUST 8, 2018; 9:33 A.M.

2                          --oOo--

3                  P R O C E E D I N G S

4          COURTROOM ADMINISTRATOR:  All rise.

5          THE COURT:  Thank you.  Please be seated, everyone.

6          COURTROOM ADMINISTRATOR:  United States vs.

7  Cemone Champagne Lewis, 2:18-cr-055-APG-GWF.  This is the time

8  set for change of plea.

9          Counsel, please note your appearances.

10         MR. SMITH:  Good morning, Your Honor.  Phillip Smith

11 appearing on behalf of the United States.

12         THE COURT:  Good morning.

13         MS. LAZO:  Good morning, Judge.  Raquel Lazo along

14 with Ms. Lambrose who -- we represent Mr. Lewis who is present

15 in custody.

16         Judge, we just wanted to let you know that my Notice

17 of Appearance has never been filed.  I thought that I had.

18 I've been working on this case with Ms. Lambrose, so we're

19 filing it this morning if that's okay.

20         THE COURT:  All right.  I don't have a problem with

21 that.

22         Mr. Smith, do you have an issue with that?

23         MR. SMITH:  No, sir.

24         THE COURT:  I will allow Ms. Lazo to appear this

25 morning along with Ms. Lambrose.

2:18-cr-055-APG-GWF - August 8, 2018

1          Good morning, Mr. Lewis.

2          THE DEFENDANT:  Good morning, sir.

3          THE COURT:  If you would just pull the microphone up a

4  little closer to you so we can hear you this morning.

5          THE DEFENDANT:  Good morning, sir.

6          THE COURT:  Good morning.

7          You've entered into a Plea Agreement with the

8  government pursuant to which you apparently wish to plead

9  guilty to one count in the Indictment charging you with being a

10  Felon in Possession of a Firearm.

11          Is that still your intent today?

12          THE DEFENDANT:  Yes, sir.

13          THE COURT:  I'm not required to accept a guilty plea.

14  I usually do, but I have a hearing like this first.  I want to

15  ask you some questions.  Primarily I want to make sure that you

16  are entering this plea knowingly and voluntarily.  That means

17  that you understand the consequences and ramifications and

18  potential penalties you face if you plead guilty to this

19  charge, and I want to make sure that you are not being forced

20  or coerced into entering this plea.  I want to make sure you

21  understand all of your rights, including the rights you'll be

22  giving up if you do plead guilty.

23          I do this because once you enter a guilty plea, it's

24  really, really difficult to withdraw the guilty plea.  So, I

25  don't want you to wake up tomorrow or next week and think,

─────2:18-cr-055-APG-GWF - August 8, 2018─────

1  there were some questions I still had or I didn't quite
2  understand something.  Today's the day to get all of your
3  questions answered, to make sure you have all the advice you
4  need from your lawyers and to ensure that you are making this
5  guilty plea knowingly and voluntarily.
6          It's not my job to talk you into pleading guilty or
7  talk you out of pleading guilty.  I don't care either way.
8  It's entirely your decision to make based upon consulting with
9  counsel.  So don't think I'm trying to steer you one way or
10  another with my questions.  I'm just covering some issues.  I
11  want to make sure that you've got all of your questions
12  answered and that I feel assured that you are doing this
13  knowingly and voluntarily.
14          THE DEFENDANT:  Yes, sir.
15          THE COURT:  At any time this morning if you don't
16  understand my question, just tell me and I'll try to repeat it
17  or to rephrase it.
18          At any time this morning if you want to speak with
19  your lawyers, just do so.  You can move the microphone aside
20  and have a private conversation with Ms. Lambrose or Ms. Lazo,
21  again, to get all of your questions answered.
22          THE DEFENDANT:  Yes, sir.
23          THE COURT:  I may ask you the same or a similar
24  question more than once.  It's not designed to trick you in any
25  way.  I've just found over time that sometimes people, if they

———— 2:18-cr-055-APG-GWF - August 8, 2018 ————

1    hear a question in a slightly different context, it may trigger

2    a different issue for you to think about.  So don't think I'm

3    trying to talk down to you or trick you in any way if I ask you

4    the same question more than once.  All right?

5              THE DEFENDANT:  Yes, sir.

6              THE COURT:  Understand everything so far?

7              THE DEFENDANT:  Yes, sir.

8              THE COURT:  Let me ask you to stand up and we'll have

9    you sworn in.

10             COURTROOM ADMINISTRATOR:  Please raise your right

11   hand.

12             You do solemnly swear that the testimony you shall

13   give in the cause now before this Court shall be the truth, the

14   whole truth, and nothing but the truth, so help you God?

15             THE DEFENDANT:  Yes.

16             THE COURT:  Thank you.  You may be seated.

17             Do you understand you just took an oath to tell the

18   truth?

19             THE DEFENDANT:  Yes, sir.

20             THE COURT:  That oath means that if you answer any of

21   my questions untruthfully, that the government could bring

22   additional charges against you for perjury or for making a

23   false statement.

24             Do you understand that?

25             THE DEFENDANT:  Yes, sir.

2:18-cr-055-APG-GWF - August 8, 2018

1            THE COURT:  How old are you, sir?

2            THE DEFENDANT:  28.

3            THE COURT:  How far did you go in school?

4            THE DEFENDANT:  My junior year.  My junior year in

5    high school.

6            THE COURT:  Okay.  Do you have a GED yet?

7            THE DEFENDANT:  No, sir.

8            THE COURT:  Have you been employed in the last five to

9    eight years?

10           THE DEFENDANT:  Yes.  I do music.

11           THE COURT:  Okay.  Do you have any trouble

12   understanding spoken English?

13           THE DEFENDANT:  Spoken who?

14           THE COURT:  English.

15           Do you have any trouble. . .

16       (Attorney-client discussion.)

17           THE DEFENDANT:  Oh.  No, sir.

18           THE COURT:  Let me ask.  Do you have -- do you have

19   any trouble understanding the English language?

20           THE DEFENDANT:  No, sir.

21           THE COURT:  Do you have any trouble reading the

22   English language?

23           THE DEFENDANT:  No, sir.

24           THE COURT:  Have you been able to effectively

25   communicate with your lawyers while they've been representing

2:18-cr-055-APG-GWF - August 8, 2018

1    you?

2              THE DEFENDANT:  Yes, sir.

3              THE COURT:  In the last 24 hours have you had any

4    medicine, any drugs of any kind, or any pills of any kind?

5              THE DEFENDANT:  No, sir.

6              THE COURT:  Have you had any alcohol in the last

7    24 hours?

8              THE DEFENDANT:  No, sir.

9              THE COURT:  Have you been treated or diagnosed

10   recently with any mental illness or any addiction to narcotic

11   drugs or alcohol?

12             THE DEFENDANT:  No, sir.

13             THE COURT:  Does counsel for the government or the

14   defense have any doubt as to the defendant's competency to

15   enter a plea today?

16             MR. SMITH:  No, Your Honor.

17             MS. LAZO:  No, sir.

18             THE COURT:  Based on counsel's representations and the

19   defendant's answers to my questions and my observations of his

20   demeanor here in court so far, I find he is competent to enter

21   a plea in this matter.

22             Mr. Lewis, have you had sufficient time to consult

23   with your lawyers in order to be fully prepared to enter a plea

24   today?

25             THE DEFENDANT:  Yes, sir.

—2:18-cr-055-APG-GWF - August 8, 2018—

1          THE COURT:  Have your attorneys fully explained to you

2  the charge pending against you?

3          THE DEFENDANT:  Yes, sir.

4          THE COURT:  Have they fully explained to you the terms

5  of the Plea Agreement and the consequences of your proposed

6  guilty plea?

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  Have they been able to answer all the

9  questions you've had for them?

10          THE DEFENDANT:  Yes, sir.

11          THE COURT:  And are you fully satisfied with your

12  lawyers' representation of you so far?

13          THE DEFENDANT:  Yes, sir.

14          THE COURT:  Have you been furnished with a copy of the

15  Indictment, that's the document that contains the charge

16  against you?

17          THE DEFENDANT:  Yeah.

18          THE COURT:  Did you read through that document?

19          THE DEFENDANT:  Yes, sir.

20          THE COURT:  Do you understand the charge in the

21  Indictment?

22          THE DEFENDANT:  Yes, sir.

23          THE COURT:  Did your attorneys explain the Indictment

24  to you?

25          THE DEFENDANT:  Yes, sir.

2:18-cr-055-APG-GWF - August 8, 2018

1          THE COURT:  Ms. Lambrose or Ms. Lazo, does your client
2   waive reading of the Indictment here in court today?
3          MS. LAMBROSE:  Yes, Your Honor, we do.
4          THE COURT:  In the Indictment, you're charged with
5   being a Felon in Possession of a Firearm.  That's a felony
6   offense.
7          The Indictment alleges, generally, that on or about
8   February 1st of this year you were found in possession of a
9   Ruger .38 caliber semiautomatic pistol and that you had been
10  previously convicted of crimes punishable by imprisonment for a
11  term exceeding 1 year.
12          Now, if the case went to trial, the government would
13  have to prove three elements in order to get you convicted on
14  that charge:
15          One, that you knowingly possessed a firearm; two, that
16  that firearm had been shipped or transported in interstate
17  commerce; and three, that at the time you possessed that weapon
18  you had previously been convicted of a felony, that is, a crime
19  charged -- or punishable by a term of imprisonment exceeding
20  1 year.
21          As I mentioned, if the case went to trial, the
22  government would have to prove each of those three essential
23  elements beyond a reasonable doubt before you could be
24  convicted.
25          Do you understand that?

2:18-cr-055-APG-GWF - August 8, 2018

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  If you plead guilty, you'll be admitting

3 that each of those three essential elements is true as it

4 applies to you.

5          Do you understand that?

6          THE DEFENDANT:  Yes.  Yes, sir.

7          THE COURT:  Ms. Lambrose, have you explained to your

8 client the essential elements of the offense?

9          MS. LAMBROSE:  Yes, Your Honor.

10          THE COURT:  And are you satisfied he fully understands

11 them?

12          MS. LAMBROSE:  I am.  Thank you.

13          THE COURT:  And I don't mean to go back and forth.

14 I'm not sure who wants to respond to questions this morning.

15 I'll rely on you, Ms. Lambrose.  Don't mean to cut you off,

16 Ms. Lazo.

17          MS. LAZO:  Yeah.  You can lead with Ms. Lambrose.

18 That's fine, Judge.

19          THE COURT:  Okay.  All right.

20          Let's talk about the Jury Trial rights that you have

21 that you'll be giving up if you plead guilty.

22          If you -- I'm sorry.  You are entitled to enter a plea

23 of not guilty and to have a speedy and public Jury Trial here

24 in this courthouse.

25          Do you understand that?

2:18-cr-055-APG-GWF - August 8, 2018

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  You have the right to the assistance of an

3    attorney, at the trial, and at all stages of the proceedings

4    against you.

5          Do you understand that?

6          THE DEFENDANT:  Yes, sir.

7          THE COURT:  At trial, you would be presumed to be

8    innocent and before you could be convicted the government would

9    have to overcome that presumption of innocence and prove to the

10   jury that you're guilty beyond a reasonable doubt.

11         Do you understand that?

12         THE DEFENDANT:  Yes, sir.

13         THE COURT:  We also have a requirement of a unanimous

14   jury verdict.  That means that in order to be convicted, all of

15   the jurors would have to agree that you're guilty beyond a

16   reasonable doubt.

17         Do you understand that?

18         THE DEFENDANT:  Yes, sir.

19         THE COURT:  At the trial, witnesses for the government

20   would have to come into court and testify here in your

21   presence.  Your attorneys could cross-examine those witnesses

22   and could object to any evidence they found objectionable.

23         Do you understand that?

24         THE DEFENDANT:  Yes, sir.

25         THE COURT:  Similarly, your attorneys could call or

———2:18-cr-055-APG-GWF - August 8, 2018———

1   subpoena witnesses to come to court and to testify in support

2   of your position.  They could offer evidence in support of your

3   position, and you could testify if you chose to.

4          Do you understand that?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  The opposite of that is also true.  You

7   have the right to remain silent.  That means you have the right

8   to present no evidence, to present no witnesses, and to not

9   testify.  If you exercised your right to remain silent, the

10  government could not use that against you in any way and could

11  not even comment upon that to the jury.

12         Do you understand all of that?

13         THE DEFENDANT:  Yes, sir.

14         THE COURT:  If you went to trial and were convicted,

15  you could appeal that verdict to the Court of Appeals.

16         Do you understand that?

17         THE DEFENDANT:  Yes, sir.

18         THE COURT:  And if you plead guilty to this charge,

19  you'll give up all of those Jury Trial and appellate rights

20  we've talked about so far, except you keep the right to the

21  assistance of counsel at all stages.

22         Do you understand all of that?

23         THE DEFENDANT:  Yes, sir.

24         THE COURT:  Let's talk about the penalties and

25  consequences you face if you plead guilty.  And I'll preface

2:18-cr-055-APG-GWF - August 8, 2018

1    this by saying I have no idea what sentence I will impose.  I
2    need a lot more information before I can determine the
3    appropriate sentence.  I need to hear from the government.  I
4    need to hear from your lawyers.  I'd want to hear from you if
5    you wanted to speak, and I also need to see the Pre-Sentence
6    Report from the Probation Office before I can really come up
7    with what I believe is to be the appropriate punishment.  So I
8    don't know yet what punishment I would impose, but I want you
9    to at least understand the maximum penalties you're facing if
10   you plead guilty.
11           If you plead guilty, you could be sentenced to a
12   prison term of up to 10 years.
13           You understand that?
14           THE DEFENDANT:  Yes, sir.
15           THE COURT:  A federal prison sentence cannot be
16   shortened by parole.
17           Are you aware of that?
18           THE DEFENDANT:  Yes, sir.
19           THE COURT:  I don't know if you're facing any other
20   state or federal charges, but if you are, the punishment
21   imposed in this case could be made to run consecutive to or
22   concurrent with the sentence imposed in any other case.
23           Do you understand what that means?
24           THE DEFENDANT:  Yes, sir.
25           THE COURT:  In addition, I can impose a fine upon you

——2:18-cr-055-APG-GWF - August 8, 2018——

1   of up to $250,000.

2           Are you aware of that?

3           THE DEFENDANT:  Yes, sir.

4           THE COURT:  You also may be required to serve a term

5   of supervised release of up to 3 years.  If supervised release

6   is imposed, there would be terms and conditions you'd have to

7   comply with.  If you violate any of those terms and conditions,

8   your release could be revoked and you could be sent back to

9   prison, potentially for up to the full amount of time of

10  supervised release and potentially without any credit for time

11  served on supervised release.

12          Do you understand all of that?

13          THE DEFENDANT:  Yes, sir.

14          THE COURT:  In addition, a special assessment of $100

15  must be imposed at the time of sentencing.

16          Are you aware of that?

17          THE DEFENDANT:  Yes, sir.

18          THE COURT:  I don't know if you are a United States

19  citizen, but in the event you're not a natural-born United

20  States citizen, you'll -- you may be deported upon completion

21  of any prison sentence and you may be denied citizenship and

22  re-entry into the country in the future.

23          Are you aware of all that?

24          THE DEFENDANT:  Yes, sir.

25          THE COURT:  Pursuant to the Plea Agreement, I will

—2:18-cr-055-APG-GWF - August 8, 2018—

1   require you to provide accurate and complete financial

2   information to the government, and you may be required to

3   surrender assets that you have obtained, either directly or

4   indirectly, as a result of the offense that you're pleading

5   guilty to.

6           Do you understand all that?

7           THE DEFENDANT:  Yes, sir.

8           THE COURT:  Do you have a copy of the Plea Agreement

9   there with you there at your table?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Did you sign that on Page 10?

12          THE DEFENDANT:  Yes, sir.

13          THE COURT:  Before you signed that, did you have an

14  opportunity to read it and fully discuss it with your

15  attorneys?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  And did your attorneys fully explain the

18  Plea Agreement to you?

19          THE DEFENDANT:  Yes, sir.

20          THE COURT:  I'm going to ask you to listen very

21  carefully.  I'm going to have Mr. Smith give us a brief summary

22  of the government's understanding of the Plea Agreement.  I

23  want to make sure everybody's on the same page and there's no

24  confusion about the terms of the Plea Agreement.  So if he says

25  something you don't think's part of your deal, today's the day

————2:18-cr-055-APG-GWF - August 8, 2018————

1   to speak up.  All right?

2           Mr. Smith, if you would, please.

3           MR. SMITH:  Yes, Your Honor.

4           Your Honor, the defendant's going to plead guilty to

5   the sole count in the Indictment charging him with one count of

6   Felon in Possession of a Firearm.  In exchange for that guilty

7   plea, the government agrees to not bring any additional charges

8   against the defendant arising out of the investigation in the

9   District of Nevada that culminated in this Plea Agreement and

10  based on conduct known to the United States, except the United

11  States reserves the right to prosecute the defendant for any

12  crime of violence as defined by 18 U.S.C. Section 16.

13          THE COURT:  Let me ask one question before you go past

14  Page 3.

15          MR. SMITH:  Yes, sir.

16          THE COURT:  Page 3, Line 21, I think there's a time

17  missing.  It says on February 1 at approximately. . . and

18  there's no time enclosed in there.

19          MR. SMITH:  Oh, you're correct, Judge.

20          THE COURT:  Do you want to just strike out

21  "approximately"?

22          MR. SMITH:  Yes.  Yes, sir.

23          THE COURT:  The time's not relevant in this, is it?

24          MR. SMITH:  It's not, Judge.

25          THE COURT:  All right.  Any objection to that by the

—————2:18-cr-055-APG-GWF - August 8, 2018—————

1   defense?

2           MS. LAMBROSE:  No, Your Honor.

3           THE COURT:  All right.  So we're going to strike "at

4   approximately" that way it will read a little cleaner.

5           All right.

6           MR. SMITH:  Thank you, Your Honor.

7           Judge, the defendant understands that he will be

8   subject to a term of supervised release of up to 3 years.

9           At sentencing, the parties will jointly recommend that

10  the Court sentence the defendant to a sentence of time served

11  unless the defendant commits any act that could result in the

12  loss of a downward adjustment for acceptance of responsibility.

13          After the defendant's entry of plea, the government

14  will not oppose the defendant's motion for release pending

15  sentencing but retains the right to argue the conditions of any

16  such release if the Court grants it.  The defendant

17  acknowledges that the Court does not have to follow the

18  parties' recommendations.

19          At sentencing, the parties retain the right to argue

20  as to the length of any term of supervised release, and the

21  defendant may request a sentence below the guidelines range as

22  calculated by the Court and may seek a downward adjustment from

23  any sentence that the Court may impose.

24          Judge, finally, there is an appellate waiver wherein

25  the defendant waives all of his appellate rights with the

—2:18-cr-055-APG-GWF - August 8, 2018—

1   exception of non-waivable claims of ineffective assistance of

2   counsel or the right to appeal any portion of the sentence that

3   is an upward departure or an upward variance from the

4   sentencing guidelines range determined by the Court.

5           THE COURT:  All right.  Thank you, Mr. Smith.

6           MR. SMITH:  Yes, Your Honor.

7           THE COURT:  Ms. Lambrose, has Mr. Smith correctly

8   summarized the terms of the Plea Agreement as you understand

9   it?

10          MS. LAMBROSE:  He has.  Thank you, Your Honor.

11          THE COURT:  Thank you.

12          Mr. Lewis, did Mr. Smith correctly summarize the terms

13  of the Plea Agreement as you understand it?

14          THE DEFENDANT:  Yes, sir.

15          THE COURT:  Did he say anything that you did not think

16  was part of your deal?

17          THE DEFENDANT:  No, sir.

18          THE COURT:  Did he leave anything out you want to ask

19  him about to make sure it is part of your deal?

20          THE DEFENDANT:  No, sir.

21          THE COURT:  The terms of the Plea Agreement are not

22  binding on me, so I don't have to accept them or follow them.

23  If I don't follow the recommendations of the Plea Agreement,

24  that does not give you the right to withdraw your guilty plea.

25          Do you understand that?

2:18-cr-055-APG-GWF - August 8, 2018

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  As Mr. Smith mentioned, your Plea

3   Agreement contains a waiver of most of your rights of appeal.

4   I want to make sure you understand that.

5          You are waiving the right to appeal any sentence I

6   impose upon you so long as it's within or below the guideline

7   range I determine; you're waiving the right to appeal the

8   manner in which I determine your sentence; and you're waiving

9   the right to appeal any other aspect of your conviction or

10  sentence.

11         Do you understand all that?

12         THE DEFENDANT:  Yes, sir.

13         THE COURT:  Are you knowingly and voluntarily waiving

14  those rights of appeal?

15         THE DEFENDANT:  Um-hmm.

16         THE COURT:  In a sense, your only right of appeal will

17  be if I sentence you to a term in prison longer than the high

18  end of the guideline range I determine and then you could

19  appeal that portion that exceeds the high end of the guideline

20  range.

21         Do you understand what all that means?

22         THE DEFENDANT:  Yes, sir.

23         THE COURT:  All right.  And you're voluntarily and

24  knowingly waiving all of those rights of appeal; is that right?

25         THE DEFENDANT:  Yes, sir.

———2:18-cr-055-APG-GWF - August 8, 2018———

1          THE COURT:  All right.  In addition, your

2   Plea Agreement contains a waiver of what we call collateral

3   challenges, and those are other ways to attack your conviction

4   or sentence.  You're waiving all of your collateral challenge

5   rights, except you keep the right to challenge based upon the

6   ineffective assistance of counsel.  That's a right you can

7   never waive; you always keep that.

8          Do you understand all of that?

9          THE DEFENDANT:  Yes, sir.

10          THE COURT:  Do you have any question about the meaning

11   of anything contained in the Plea Agreement?

12          THE DEFENDANT:  No, sir.

13          THE COURT:  So you fully understand the terms of the

14   Plea Agreement; is that right?

15          THE DEFENDANT:  Yes, sir.

16          THE COURT:  Has anybody made any promise to you, other

17   than what's contained in the Plea Agreement?

18          THE DEFENDANT:  No, sir.

19          THE COURT:  So the Plea Agreement contains the entire

20   understanding you have with the government regarding the charge

21   against you; is that right?

22          THE DEFENDANT:  Besides, um . . . the state stuff?

23          MS. LAZO:  Yeah.

24          THE COURT:  You ought to consult with your attorney

25   before you say something on the record.

2:18-cr-055-APG-GWF - August 8, 2018

1          MS. LAZO:  So, Judge, he's just pausing because there

2   is an agreement where the government is going to assist us in

3   getting the D.A. to resolve the related state case that's

4   pending before them.  It's the same exact gun here.

5          MR. SMITH:  It's actually a different case.

6          MS. LAZO:  That's the one that's a different one?

7          MR. SMITH:  Yeah.  It's where he's in the Maserati.

8          MS. LAZO:  Right, but -- but -- which -- the one that

9   we're going to dismiss -- you're going to help us dismiss is

10  this case?

11         THE COURT:  My understanding from reading the --

12  the --

13         MS. LAZO:  I just want to make sure, because I know he

14  has two, but. . .

15         MR. SMITH:  This case has to be dismissed once he --

16         MS. LAZO:  Correct, but it's the other one that you're

17  going to dismiss?

18         MR. SMITH:  There's an additional case.

19         MS. LAZO:  Okay.  So there's two.

20         THE COURT:  Yeah.  My understanding from Pretrial

21  Services report is there was an arrest on February 1 by Metro.

22         MS. LAZO:  That's this one.

23         MR. SMITH:  That's this one.

24         THE COURT:  And then there's also one on February 10.

25         MS. LAZO:  Correct.

2:18-cr-055-APG-GWF - August 8, 2018

1             THE COURT:  Own or possess guns.  So you're talking

2     about the second one?

3             MR. SMITH:  The February 10th is a separate case,

4     Judge.

5             MS. LAZO:  So, there's two separate gun cases.  The

6     February 1st one is obviously this case, and there is an

7     agreement where the government is going to assist us in getting

8     those dismissed.  Correct?

9             MR. SMITH:  Yes.

10            THE COURT:  Is that correct, Mr. Smith?

11            MR. SMITH:  Yes, Judge, it is.

12            THE COURT:  Okay.  All right.  Thanks for the

13    clarification.

14            With that clarification, then, does that clarification

15    and the Plea Agreement, that's the entire understanding you

16    have with the government regarding the charge against you; is

17    that right?

18            THE DEFENDANT:  Um. . .

19        (Attorney-client discussion.)

20            MS. LAZO:  Right.  So, Judge, there's also, which is

21    in the Plea Agreement, which the government already did state

22    that he's not going to oppose our request for his release after

23    entry of plea.

24            THE COURT:  Yeah.

25            MS. LAZO:  But Mr. Phil -- Mr. Smith did state that,

2:18-cr-055-APG-GWF - August 8, 2018

1  so he just wanted to make sure that --

2          THE COURT:  Yeah.

3          MS. LAZO:  -- that was part of it.

4          THE COURT:  Mr. Smith stated that part of the

5  Plea Agreement is that they would not oppose your request to be

6  released from custody today pending sentencing.

7      (Attorney-client discussion.)

8          THE COURT:  Okay.  So let me ask you --

9          MS. LAZO:  Yeah.  Thank you.

10         THE COURT:  -- do you have any other agreements with

11 the government?

12         THE DEFENDANT:  No.

13         THE COURT:  So it's the Plea Agreement, which includes

14 the government not opposing your request for immediate release

15 today, and it includes some agreement with the government that

16 they will try to assist in resolving the state court gun

17 charge.

18         THE DEFENDANT:  Yes, sir.

19         THE COURT:  Anything else?

20         THE DEFENDANT:  No, sir.

21         THE COURT:  All right.  Did you knowingly and

22 voluntarily make that entire agreement with the government?

23         THE DEFENDANT:  Yes, sir.

24         THE COURT:  And that represents the entire

25 understanding you have with the government about the charge

———2:18-cr-055-APG-GWF - August 8, 2018———

1  against you; right?

2          THE DEFENDANT:  Yes, sir.

3          THE COURT:  All right.  Mr. Smith, has the government

4  made any other plea offers that are more favorable to

5  Mr. Lewis?

6          MR. SMITH:  No, Your Honor.

7          THE COURT:  Do you agree with that?

8          MS. LAMBROSE:  I do, Your Honor.

9          THE COURT:  Thank you.

10          Mr. Lewis, has anybody threatened you in order to get

11  you to plead guilty?

12          THE DEFENDANT:  No, sir.

13          THE COURT:  Is anyone forcing you in any way to plead

14  guilty?

15          THE DEFENDANT:  No, sir.

16          THE COURT:  Has anyone said if you don't plead guilty

17  that additional charges may be bought against you or some other

18  adverse action may be taken against you?

19          THE DEFENDANT:  No, sir.

20          THE COURT:  Has anybody made any promise to you as to

21  what sentence I will impose?

22          THE DEFENDANT:  No, sir.

23          THE COURT:  Has the government -- I'm sorry.  Has your

24  attorney explained to you about the sentencing guidelines and

25  how she believes they may apply to your sentence?

—2:18-cr-055-APG-GWF - August 8, 2018—

1           THE DEFENDANT:  Yes, sir.

2           THE COURT:  In determining the appropriate punishment,

3   I'm required to consult the sentencing guidelines and to

4   calculate the applicable guideline range.

5           Do you understand that?

6           THE DEFENDANT:  Yes, sir.

7           THE COURT:  After considering that range, I'm also

8   required to consider any variances or departures, upwards or

9   downwards from that range.

10          Do you understand what that means?

11          THE DEFENDANT:  Yes, sir.

12          THE COURT:  In determining the appropriate punishment,

13  I can consider any relevant conduct you've engaged in,

14  including any prior criminal history you have.

15          Do you understand that?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  The guidelines are only advisory.  I don't

18  have to follow them.  I have to consult them, but I'm not

19  required to follow them.

20          Do you understand that?

21          THE DEFENDANT:  Yes, sir.

22          THE COURT:  And so while you and your attorneys may

23  have in mind some particular sentence or range, I may decide

24  that a different punishment is more appropriate.

25          Do you understand that could happen?

1              THE DEFENDANT:  Yes, sir.

2              THE COURT:  If that happens and I sentence you to

3    something you're not expecting, that would not give you the

4    right to withdraw your guilty plea.

5              Do you understand that?

6              THE DEFENDANT:  Yes, sir.

7              THE COURT:  And, again, I have no idea at this point

8    what sentence I will impose, but in the event I impose the

9    maximum sentence of 10 years and the maximum fine and the

10   maximum supervised release, that would not give you the right

11   to withdraw your guilty plea.

12             Do you understand all that?

13             THE DEFENDANT:  Yes, sir.

14             THE COURT:  Do you understand all of the possible

15   punishment consequences of your plea of guilty?

16             THE DEFENDANT:  Yes, sir.

17             THE COURT:  In order to accept your plea, I need a

18   sufficient factual basis for that.  In your Plea Agreement,

19   starting on Page 3, Line 19, and carrying over to Page 4,

20   Line 6, you admit to some specific facts.  Did you read those

21   facts carefully before you signed this Plea Agreement?

22             THE DEFENDANT:  Yes, sir.

23             THE COURT:  I want to go through these with you and

24   make sure these are true, and again, I'll remind you that you

25   are under oath.

2:18-cr-055-APG-GWF - August 8, 2018

1           On February 1st of 2018 were you involved in a traffic

2    stop in a car you were driving at 125 East Harmon Avenue?

3           THE DEFENDANT:  Yes, sir.

4           THE COURT:  And during that stop were you asked to

5    step out of the vehicle?

6           THE DEFENDANT:  Yes, sir.

7           THE COURT:  During the investigation that went along

8    with that traffic stop did the police recover a Ruger .38

9    caliber semiautomatic pistol?

10          THE DEFENDANT:  Yes, sir.

11          THE COURT:  And that pistol bore serial number

12   380-108493.

13          Is that true?

14          THE DEFENDANT:  Yes, sir.

15          THE COURT:  And that was on your person?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  So you were in possession of that firearm;

18   correct?

19          THE DEFENDANT:  Yes, sir.

20          THE COURT:  And at the time you were in possession of

21   that firearm you had previously been convicted of a crime

22   punishable by a term of imprisonment exceeding 1 year; is that

23   right?

24          THE DEFENDANT:  Yes, sir.

25          THE COURT:  And you agree that that firearm had been

———————2:18-cr-055-APG-GWF - August 8, 2018———————

1  shipped and transported in interstate commerce?

2          THE DEFENDANT:  Yes, sir.

3          THE COURT:  And did all this occur in the State and

4  Federal District of Nevada?

5          THE DEFENDANT:  Uh. . . this case.  Not the old case.

6          THE COURT:  Well, this -- the facts that I just asked

7  you about --

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  -- those facts occurred here in the State

10  and Federal District of Nevada; right?

11          THE DEFENDANT:  Yes, sir.

12          THE COURT:  Here in Clark County, Nevada?

13          THE DEFENDANT:  Yes, sir.

14          THE COURT:  All right.  Mr. Smith, is the government

15  satisfied with the factual basis for the plea?

16          MR. SMITH:  Yes, Your Honor, I am.  Thank you.

17          THE COURT:  All right.  Mr. Lewis, I've got one last

18  question for you before I call for your plea.

19          THE DEFENDANT:  Yes, sir.

20          THE COURT:  Do you have any remaining questions,

21  concerns, issues, or anything you want to speak with your

22  lawyers about?  Take all the time you need.  Next I'll call for

23  your plea, but if there's anything else you want to talk to

24  your lawyers about, take all the time you need and chat with

25  them.

————2:18-cr-055-APG-GWF - August 8, 2018————

1    (Attorney-client discussion.)

2         MS. LAZO:  Judge, he does not have any other

3    questions.

4         THE COURT:  All right.  Mr. Lewis, you've got all of

5    your questions answered?

6         THE DEFENDANT:  Yes, sir.

7         THE COURT:  You understand all the consequences of

8    your plea?

9         THE DEFENDANT:  Yes, sir.

10         THE COURT:  Is it still your intent to plead guilty to

11    this charge?

12         THE DEFENDANT:  Yes, sir.

13         THE COURT:  Then with regard to Count One of the

14    Indictment charging you with being a Felon in Possession of a

15    Firearm, how do you plead?

16         THE DEFENDANT:  Guilty.

17         THE COURT:  Are you pleading guilty because in truth

18    and in fact you are guilty and for no other reason?

19         THE DEFENDANT:  Yes, sir.

20         THE COURT:  I find the defendant is fully competent

21    and capable of entering an informed plea; that he is aware of

22    the nature of the charge and the consequences of his guilty

23    plea; and that his plea of guilty is a knowing and voluntary

24    plea supported by an independent factual basis containing each

25    one of the essential elements of the offense.  Mr. Lewis' plea

1   is therefore accepted, and he is now adjudged guilty of that

2   offense.

3           I'll now order that a Pre-Sentence Investigation

4   Report be prepared by the Probation Office.  Once that's been

5   completed, you and your attorneys will have a chance to read

6   it.  Read it very carefully.  If you see any factual errors in

7   that report, point those out to your lawyers so they can be

8   corrected.

9           THE DEFENDANT:  Yes, sir.

10          THE COURT:  It's important that that report be

11  accurate because I'm going to rely upon it in determining the

12  appropriate punishment and the Bureau of Prisons may rely upon

13  it for programs or placements you may be eligible for in the

14  event you're incarcerated.

15          At the time of sentencing, your attorneys can speak on

16  your behalf.  You, too, can speak at sentencing if you'd like.

17  You're not required to, but just think about it between now and

18  then if there's anything you'd like to say at sentencing.

19          Ms. Johansen, may I have a date and time for

20  sentencing, please?

21          COURTROOM ADMINISTRATOR:  November 15th at 10:30.

22          THE COURT:  November 15 at 10:30.

23          All right.  Is the government seeking detention or

24  release conditions for this defendant?

25          MR. SMITH:  So, Judge, according to the

——2:18-cr-055-APG-GWF - August 8, 2018——

1  Plea Agreement, the defendant's going to move to be released

2  and I'm simply going to not oppose, i.e., remain silent and

3  just leave it to the Court's discretion.

4          THE COURT:  All right.

5          MS. LAZO:  Judge, we're asking for you to consider his

6  release.  I know that this is typically -- this is somewhat

7  abnormal right at this part where, you know, you have the

8  defendant pleading guilty and technically the standard is

9  supposed to be harder to meet, but this is a case unique in the

10  terms of the Plea Agreement as we've just reviewed.  Each side

11  is giving up something and Mr. Lewis is giving up his Motion to

12  Suppress.  He had a Motion to Suppress.  He really believed in

13  his motion, but to conserve and -- you know, resources, the

14  government has made a decision to extend an offer and Mr. Lewis

15  is accepting that offer and we're going to ask you to give him

16  the full benefit of his Plea Agreement, which includes the

17  release -- that we can make the pitch for release.

18          I recognize, Judge, that my client does have criminal

19  history from a young age.  18, 19, 20, he was picking up

20  felonies in Chicago.  And it seems that I would note when

21  you're looking at the Pretrial report, Judge, in 2011, when he

22  got released from his prison sentence, Page 4, he did some time

23  there for an aggravated assault.  Notably, Judge, if you look

24  from 2011 to present, he really hasn't gotten into any

25  significant trouble.  There's been contacts with law

2:18-cr-055-APG-GWF - August 8, 2018

1    enforcement.  We can't deny that.  But a lot of those cases,

2    Judge, if you look on Page 5, really, you only have a

3    misdemeanor conviction.  Everything else, there's no

4    disposition.

5            THE COURT:  Well, there's a domestic battery that a

6    Protection Order issued on.

7            MS. LAZO:  I'm sorry, Judge, you're right.  There is

8    that, as well -- as well --

9            THE COURT:  Unlawful possession of a weapon.  There's

10   an aggravated battery with the discharge of a firearm.

11           MS. LAZO:  Well, so, with a lot of those, though, they

12   didn't charge him.  So, you look at the unlawful possession of

13   a weapon, they didn't charge him.  It doesn't seem that the

14   aggravated battery -- so there's a lot of contacts, but no

15   resolution, no disposition that we can tell of.

16           I guess what I'm saying, Judge, is I think he has

17   attempted -- from his release, he had, I think, attempted at

18   rehabilitation.  I think that that is clear.  There are no

19   felony convictions.  He tried to leave Chicago.  Things were

20   not good there in Chicago.  He came over here.  His contact

21   here -- you know, he hasn't started off on the best foot here,

22   but I think he is attempting.  Just removing and recognizing

23   that your circumstances around you are not the best is

24   positive.

25           The biggest change, though, Judge, is the birth of his

2:18-cr-055-APG-GWF - August 8, 2018

1   child.  His girlfriend is present in court along with the baby.

2   She's willing to be a third-party custodian to make sure that

3   he's going to appear for his future court dates and stay out of

4   trouble.

5           THE COURT:  Tell me what you think that means, her

6   being a third-party custodian.

7           MS. LAZO:  I -- what I think that means, Judge, is

8   that she's responsible to make sure that he abides by any

9   condition this Court sets.

10          THE COURT:  So if he flees, I get to put her in

11  custody?

12          MS. LAZO:  Technically, yes, that's what she signs up

13  for.  She could be held in contempt for not following this

14  Court's order because she is signing up to say, yes, I'm

15  responsible for him.

16          THE COURT:  Okay.

17          MS. LAZO:  So, that's a big responsibility, Judge.

18  It's not to be taken lightly.

19          THE COURT:  If that's the consequences, I agree.

20          MS. LAZO:  So, you know, the Plea Agreement

21  contemplates a sentence of credit for time served.  That's

22  another big factor, Judge.  He is going to be put on supervised

23  release.  And, so, why not give him the opportunity now to

24  start rehabilitating and be subject to whatever conditions this

25  Court sets forth?

2:18-cr-055-APG-GWF - August 8, 2018

1        As I said, it's a very unique plea, but the parties

2   have given up something and I'm just asking that you give him

3   the full benefit of his Plea Agreement because that's part of

4   the deal.  I know that you don't have to follow it.  He knows

5   that.  He recognizes this, Judge.  I ask that you put him under

6   whatever conditions you see fit.

7        There is a big deterrence here, too, Judge, because if

8   he messes up, not only does he go back into custody, but guess

9   what, the Plea Agreement is void.  So he has a lot to lose by

10  not complying with this Court's order and I think that's the

11  biggest thing that this Court can be confident in that, you

12  know, he knows that he can be facing jail time where he's no

13  longer facing jail time, assuming this Court were to follow it,

14  but as you started off at the beginning of this hearing, you

15  tend to follow the Plea Agreements.

16        So, Judge, unless you have any questions for me, I

17  don't have anything to add.  I want to make sure that I covered

18  everything with Ms. Lambrose.

19        THE COURT:  Um-hmm.

20     (Counsel conferring.)

21        MS. LAZO:  Unless you have any questions of me, Judge,

22  I would submit it on that.

23        As I said, his girlfriend is here if you have any

24  questions for her.  The only thing I guess I forgot to leave

25  out [sic] is although he doesn't -- hasn't lived in Las Vegas

1   very long, he did have a community in Chicago, but he does have

2   a place here.  He resides with her.  The baby is here.  So, he

3   does have ties here.

4           As far as employment, Judge, his employment, he's a

5   musician.  So, it might not be as stable as Pretrial wants it,

6   but he's willing to work with Pretrial to do whatever he needs

7   to do to show that that is a legitimate employment and

8   hopefully he can bring in the income that he needs for his

9   family.

10          THE COURT:  Thank you.

11          MS. LAZO:  Thank you, Judge.

12          THE COURT:  Mr. Smith, I know the Plea Agreement says

13  you're not going to oppose.  Do you have anything to add?

14          MR. SMITH:  Well, Judge, the Plea Agreement also says

15  that the government reserves the right to request any

16  conditions.

17          THE COURT:  Absolutely.

18          MR. SMITH:  So, what I will do to save us time is if

19  you are inclined to release the defendant, the conditions that

20  I would ask the Court to consider are the following:

21          Number 1.  I'd ask that you order that he not have any

22  contact with any felons, similar to what is expected of one on

23  supervised release.  My concern about that is, is that this

24  pending state case involves Mr. Lewis allegedly being in the

25  company of other felons, a bunch of guns being found in the

─────2:18-cr-055-APG-GWF - August 8, 2018─────

1  car, which obviously is a mixture -- or a recipe for disaster.

2  So I'd ask that you, you know, order him that, you know, if

3  he's going to try and rehabilitate himself, then he needs to

4  choose his friends wisely.

5        Additionally, I know that that may kind of put

6  somewhat of a crimp in his style with regards to his music

7  career because it's my understanding that some of the

8  additional musicians that he is associating himself with are

9  also felons.  Acknowledging that that may cause some problem

10  with his employment, I still think that it is a necessary

11  condition if you are going to release him.

12        The only other thing I would say, Judge, is, just

13  briefly, to respond to Ms. Lazo's assertion to the Court that

14  if Mr. Lewis does not abide by any conditions of release that

15  you impose upon him that the Plea Agreement will be void, I

16  just want to clarify, the Plea Agreement wouldn't be void.

17  What would happen is the government would then not be required

18  to recommend a time-served sentence, but he would still be

19  bound by the Plea Agreement.

20        THE COURT:  You agree with that, Ms. Lazo?

21        MS. LAZO:  That's what I meant, Judge, that --

22        THE COURT:  Okay.

23        MS. LAZO:  -- the terms are not, you know, in that

24  sense, but yes, his guilty plea stands but the government

25  doesn't have to ask for time served.

2:18-cr-055-APG-GWF - August 8, 2018

1          THE COURT:  All right.  Mr. Smith, I'm going to ask
2   you, and I meant to ask you earlier, but it's sort of related
3   to release but it's mostly related to the recommendation of
4   punishment of time served, which does get into my calculation
5   of supervised release conditions.  Ms. Lazo says it's based
6   upon a potential suppression motion.  Tell me what the -- why
7   is the government -- I mean, it sounds like he's been in
8   custody for only a few months.  Typically, I know the
9   government requests a greater deal of custodial sentence on
10  felons in possession of a firearm so I'm just curious why we're
11  here where we are now.
12          MR. SMITH:  Judge, we're here where we are now
13  because, you know, candidly, sometimes -- you know, I'm only
14  one person and I kind of have to pick my battles and this is a
15  case where, in weighing the amount of resources that I would
16  have had to invest in fighting the suppression motion -- and
17  again, Judge, I'm not conceding that it would have been
18  successful.
19          THE COURT:  Of course.
20          MR. SMITH:  If Ms. Lazo and Ms. Lambrose are candid,
21  they'll tell you that I have been saying, look, I think I can
22  win this thing, but, you know, I appreciate that sometimes you
23  have to pick your battles and so this was one that I thought
24  under the circumstances that this Plea Agreement and the
25  recommendation was not entirely unreasonable because also to be

2:18-cr-055-APG-GWF - August 8, 2018

1  candid, Judge, you know, I'm honest- -- if you follow the
2  Plea Agreement, I'm going to ask for 3 years of supervised
3  release and if Mr. Lewis hasn't learned his lesson, then, for
4  lack of a better term, the government will get another crack at
5  him.  That's kind of how I look at it.
6       THE COURT:  And -- and -- and believe me, I'm not
7  criticizing at all the agreement that was entered.  I'm just
8  trying to get an understanding of the factors that led up to
9  that and I completely acknowledge and appreciate what you're
10  saying.  Obviously, there are limited resources and you do have
11  to pick your battles --
12       MR. SMITH:  Yes, sir.
13       THE COURT:  -- and it makes sense.
14       MR. SMITH:  I had just finished a trial.  I have
15  another one set on August 20th.  I have a third one set on
16  August 20th, so it was just kind of. . . let's see what we can
17  do in terms of resources.
18       THE COURT:  And I -- and I completely appreciate and
19  agree with that, so, just kind of helps me understand that.
20       MR. SMITH:  Yes, sir.
21       THE COURT:  Thank you.
22       Officer Bowen, I'd love to hear from you.  I know
23  you've submitted a report saying you recommend custody.
24       PRETRIAL OFFICER:  Yes, Your Honor.  We stand on our
25  original report and our original recommendation, which also

1   included verified information from the defendant's girlfriend,

2   which I did reach out and re-verify that that information is,

3   in fact, still true, but we would stand on our original

4   recommendation.

5           THE COURT:  All right.  Thank you.

6           MS. LAZO:  Judge, and I also wanted to thank Pretrial

7   because they threw this together pretty quickly and we didn't

8   get the accurate information to her until basically last night

9   and she contacted the girlfriend this morning.

10          THE COURT:  And I just got a report this morning from

11  Officer Bowen confirming that, so I appreciate the extra work

12  that was put into this in that regard.

13          MS. LAZO:  Judge, and the other thing, just so you

14  know, is that if you were to release him, he does have those

15  warrants, so he's not going to immediately kick out to the

16  street.  Everybody is fully aware of that.  Because those

17  pending cases are ultimately to be dismissed, we are in contact

18  with his state D.A. and public defender on those cases.  There

19  is one that we don't have assistance on, but that's the affray

20  and the -- the affray one that's from February 9th.

21          THE COURT:  Um-hmm.

22          MS. LAZO:  I anticipate that that will be a quick

23  resolve given that he's been in custody over here.  My -- my

24  guess is that they'll just give him credit for time served.  So

25  he recognizes that he's got to take care of those, and there's

—2:18-cr-055-APG-GWF - August 8, 2018—

1    potentially two traffic warrants.  I didn't show those.  I just

2    am seeing them here on Pretrial, but those would be quick

3    resolutions on both of those I would anticipate.

4            THE COURT:  Mr. Lewis, looking at your prior record

5    gives me a lot of concern.  Some of these arrests, the age of

6    10, 15, 16, 18, 19, 20 I can. . . while not certainly condone,

7    I can understand.  You're young, you've got bad influence on

8    your life and kids don't make good decisions.  I get that.

9            THE DEFENDANT:  Yes, sir.

10           THE COURT:  But as you get older and you're in your

11   mid-twenties and still incurring a lot of arrests, I am really

12   troubled.  Domestic battery.  Unlawful possession of a weapon.

13   Aggravated battery and discharge of a firearm.  Now, while

14   those weren't prosecuted, apparently, the fact is, you know,

15   where there's smoke there's fire and you're either causing

16   problems yourself or you're around people causing problems and

17   that's not a good recipe.

18           THE DEFENDANT:  Yes, sir.

19           THE COURT:  I'm concerned that in 2013 you've got a

20   non-appearance, which tells me you're not respecting the court

21   because the court ordered you to be somewhere.  When you're 19

22   you've got probation violations, on Page 4.  From 2009, an

23   unsatisfactory probation termination.  Couple times -- well, I

24   guess that was the same -- well, I don't know if that's the

25   same one or not, but you've got two of them on Page 4 of the

─────2:18-cr-055-APG-GWF - August 8, 2018─────

1  report.  Apparently, at the time of your arrest in 2010, you

2  might have assaulted the police officer.  You fled in this

3  case.  It's just a bad record and that gives me real concern.

4  I balance that against the fact that there's a recommendation

5  for time served; that I can release you with conditions; that

6  as Ms. Lazo points out, your release time between now and

7  sentencing I will take into account and if you violate those

8  conditions, I am most likely going to incarcerate you

9  immediately and keep you there pending sentencing and may not

10 sentence you to time served at that point.  So you need to be

11 on your best behavior.

12        And, as Mr. Smith points out, if I follow -- even if I

13 follow the government and the parties' recommendation of time

14 served, you're going to do some supervised release in which

15 case you're going to have to behave.

16        I'm going to probably give you this same lecture when

17 I sentence you to supervised release but I'm going to tell you

18 right now, you may be at a crossroads.  You're in your

19 mid-twenties, late twenties now.  It's time to kind of put that

20 nonsense behind you.  You've got a new baby.  You've got people

21 that depend upon you.  Now's the time to start demonstrating

22 that to me, to our Pretrial Services officer, to our probation

23 officer, to Mr. Smith, to your attorneys, to everybody, that

24 you can do this.

25        THE DEFENDANT:  Yes, sir.

2:18-cr-055-APG-GWF - August 8, 2018

1          THE COURT:  You probably need a new set of friends,

2    without casting aspersions on your friends, but if they're

3    getting you in trouble, get a new influence.

4          I hope the music business pans out for you, but you

5    need to also probably get another job to support yourself while

6    you're pursuing the music career.  I know a lot of people that

7    go into acting and they wait tables while they're waiting for

8    their big break acting.  Probably the same thing for musicians.

9    You know, at some point I hope it breaks for you and you make a

10   boatload of money.

11         THE DEFENDANT:  Yeah.

12         THE COURT:  But in the meantime, you need some steady

13   income to support yourself.

14         THE DEFENDANT:  Yes, sir.

15         THE COURT:  So you need to demonstrate to me some

16   efforts to get a job --

17         THE DEFENDANT:  All right.

18         THE COURT:  -- in addition to the music.

19         MR. SMITH:  And also keep -- it will help keep him

20   busy, Judge.

21         THE COURT:  What's that?

22         MR. SMITH:  It will also help keep him busy.

23         THE COURT:  It will help keep you busy.  Exactly

24   right.

25         You know, when I was a kid, my teachers told me idle

—2:18-cr-055-APG-GWF - August 8, 2018—

1   hands are the devil's workshop and, you know, when you sit

2   around with nothing to do, you get yourself potentially in

3   trouble.  So, now's the time, get your act together.

4            THE DEFENDANT:  I promise to stay out the way.  I --

5   I've been held 5 months and did a lot of thinking in my mind,

6   body, and soul.  I just had a baby girl a month ago today and

7   she really everything.  They -- my girlfriend and my baby is

8   really everything I got.  I know I done did things in the past,

9   but I left Chicago trying to get my life together.  I did not

10  have that gun to hurt nobody.  Like, I'm really targeted in

11  life and be really people like. . . always funny stuff going

12  on, so, I just -- you know, I made the wrong decisions, but I'm

13  going to do better.

14           THE COURT:  All right.  I'm going to give you the

15  chance.

16           THE DEFENDANT:  Thank you.

17           THE COURT:  And if you think you're a target, it's

18  time to change the environment.

19           THE DEFENDANT:  Yes, sir.

20           THE COURT:  Get yourself a new set of friends, get

21  yourself a new place to live, whatever you got to do, get out

22  of the neighborhood, do whatever you got to do to set yourself

23  on a path to success.

24           THE DEFENDANT:  Yes, sir.

25           THE COURT:  And I agree with Mr. Smith, you know, not

─────────2:18-cr-055-APG-GWF - August 8, 2018─────────

1    having contact with felons is important.  It may be difficult

2    in your industry, but it's important.

3              THE DEFENDANT:  Yes, sir.

4              THE COURT:  What I suggest to you is when you figure

5    out who you've got to work with or you got an opportunity to

6    work with somebody, pick up the phone, call Pretrial and ask

7    them, can I hang out with this person, can I work with this

8    person, they may be a felon.  If there's good, legitimate

9    reasons you can justify it, they may say, okay, thanks for

10   telling us, now we know, we're not going to run you in to

11   Judge Gordon, yes, you can or no, you can't.  You know, if

12   they've got real concerns that this is going to be something

13   that's going to be bad for you, they may say no, you got to

14   find a different alternative.  But if they say, you know what,

15   it's legitimate, we think, they may say okay and we're not

16   going to run you in on it.  Ask for permission, not for

17   forgiveness.

18             THE DEFENDANT:  Yes, sir.

19             THE COURT:  Okay.  If there's any question whether you

20   can do something or not, pick up the phone and ask for

21   permission.

22             THE DEFENDANT:  Yes, sir.

23             THE COURT:  Because I don't want you coming in here

24   trying to say, Judge Gordon, I thought I could do this, I

25   thought I could do that.  The answer is going to be no, you

—————2:18-cr-055-APG-GWF - August 8, 2018—————

1   should have asked.

2           THE DEFENDANT:  Okay.

3           THE COURT:  Are we all on the same page?

4           THE DEFENDANT:  Yes, sir.

5           THE COURT:  All right.  I don't want to see you

6   violate; I want to see you get your stuff together.

7           THE DEFENDANT:  Yes, sir.

8           THE COURT:  But you got to make a strong effort to do

9   that, and it's up to you to police your environment.

10          If somebody gets in your car with drugs or weapons,

11  you get them out of that car immediately.

12          THE DEFENDANT:  Yes, sir.

13          THE COURT:  If you get into a car and there's drugs or

14  weapons, get yourself out of there.  Call an Uber and take an

15  Uber home or do whatever you got to do, but get out of there --

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  -- because you get pulled over, you get

18  searched and they find drugs or weapons on you, you're

19  explaining and when you're explaining, you're losing.  Don't

20  get yourself in that situation.

21          THE DEFENDANT:  Yes, sir.

22          THE COURT:  Somebody brings stuff to your house or

23  apartment, make them get rid of it.  All right?

24          THE DEFENDANT:  Yes, sir.

25          THE COURT:  I'm going to give you an opportunity.

———2:18-cr-055-APG-GWF - August 8, 2018———

```
1              THE DEFENDANT:  Thank you.

2              MR. SMITH:  Can you remind him that under federal law

3    that also includes marijuana?

4              THE COURT:  Yes.  Good point.  Because I just had that

5    in my last hearing.  I had somebody come in on a violation

6    claiming that they had marijuana butter somebody inadvertently

7    put in their food.  That's a federal violation.  State law

8    allows recreational marijuana, feds don't and you're in the

9    federal system.

10             THE DEFENDANT:  I never -- I don't smoke weed anyway.

11             THE COURT:  No smoking weed, and if somebody's cooking

12   a meal for you, ask them if they put marijuana in your food --

13   in the butter.

14             MS. LAZO:  Police the kitchen.

15             THE COURT:  Police the kitchen.  You know, I just had

16   that half an hour ago.  That's why I don't want to see you do

17   it.  Ask.  Make sure.  Because there will be testing and you're

18   going to test positive if somebody puts it in there and you're

19   explaining and it's a bad situation.

20             THE DEFENDANT:  Yes, sir.

21             THE COURT:  I'm reading you the riot act right now

22   because I see this come back to me -- not on you but on

23   others -- and I don't want to have this same conversation that

24   I had half an hour ago with you.

25             All right.  So, let's talk about conditions.  We're
```

——2:18-cr-055-APG-GWF - August 8, 2018——

1  going to have the girlfriend as third-party custodian.

2            PRETRIAL OFFICER:  Your Honor. . .

3            THE COURT:  Yes.  If you got some recommendations, I'd

4  love them, Ms. Bowen.

5            PRETRIAL OFFICER:  Your Honor, I'd like to comment on

6  that.  If you look at our original report, on Page 2,

7  Officer Barlow had spoken to the girlfriend and had determined,

8  based on her conversation with the defendant's girlfriend, that

9  she would not be a suitable third-party custodian based on her

10 criminal record.

11           THE COURT:  Ah.  Gotcha.  Okay.

12           And for some reason I don't have the original that was

13 given to -- I've got yours.  I didn't get the original report

14 from the magistrate judge.

15           PRETRIAL OFFICER:  Oh, I'm sorry.  I thought I sent

16 it.

17           THE COURT:  You probably did but I forgot to print it

18 out.  That's fine.

19           Let's go about it this way.  What conditions would you

20 recommend?  No contact with felons is good.

21           The employment, I want to see constructive efforts of

22 getting employment.

23           PRETRIAL OFFICER:  So, if you'd like, I can just go

24 through them.

25           THE COURT:  Please.  Thank you.

2:18-cr-055-APG-GWF - August 8, 2018

1          PRETRIAL OFFICER:  Okay.  We'd recommend that the

2     defendant shall report to U.S. Pretrial Services supervision.

3          The defendant shall satisfy all outstanding warrants

4     within 60 days and provide verification to Pretrial Services or

5     the supervising officer.

6          The defendant shall abide by the following

7     restrictions on personal association, place of abode or travel:

8          That travel is restricted to Clark County, Nevada.

9          The defendant shall maintain his residence at 828 East

10    Flamingo Road, Number 118, in Las Vegas, Nevada, and not move

11    prior to obtaining permission from the Court or his Pretrial

12    Services officer.

13         The defendant shall maintain or actively seek lawful

14    and verifiable employment and notify Pretrial Services or the

15    supervising officer prior to any change.

16         The defendant shall refrain from possess- --

17    possessing a firearm, destructive device, or other dangerous

18    weapon.

19         The defendant shall submit to any testing required by

20    Pretrial Services or the supervising officer to determine

21    whether the defendant is using a prohibited substance.  The

22    defendant shall pay all or part of the cost of the testing

23    program based on his ability to pay.

24         The defendant shall refrain from the use or unlawful

25    possession of a narcotic drug or other controlled substance

2:18-cr-055-APG-GWF - August 8, 2018

1   unless prescribed by a licensed medical practitioner.

2           The defendant shall not be in the presence of anyone

3   using or possessing a narcotic drug or controlled substance.

4           The defendant shall participate in a location

5   monitoring program, home detention, where the defendant is

6   restricted to his residence at all times, except for

7   employment, education, religious services, medical, substance

8   abuse or mental health treatment, attorney visits, court

9   appearances, court-ordered obligations or other activities

10  pre-approved by Pretrial Services.

11          The defendant shall submit to the type of location

12  G- -- monitoring that would be GPS monitoring, global

13  positioning satellite, and the defendant shall not tamper with,

14  damage, or remove the monitoring device and shall charge the

15  said equipment according to instructions provided by his

16  Pretrial Services officer.  And the defendant shall pay all or

17  part of the cost based on his ability to pay of the location

18  monitoring program.

19          And then I believe the last condition the Court wanted

20  was him not to have association with felons.  I don't know how

21  we want that to read.

22          Do you have a good. . .

23          THE COURT:  Yeah.

24          MR. SMITH:  I think it could -- it can just say the

25  defendant shall not associate with any known felons.

—————2:18-cr-055-APG-GWF - August 8, 2018—————

1          PRETRIAL OFFICER:  Okay.

2          THE COURT:  Correct.

3          PRETRIAL OFFICER:  Okay.

4          MR. SMITH:  Something along those lines.

5          THE COURT:  Without -- without permission of the

6   Pretrial Services Office.

7          MR. SMITH:  Without permission of Pretrial Services.

8          PRETRIAL OFFICER:  Okay.

9          THE COURT:  That way he can clear it with you and if

10  you say it's cool, it's great.  If you say no, he doesn't.

11         PRETRIAL OFFICER:  Okay.  I appreciate that.

12         And I just want to make the Court aware, and I know

13  his defense counsel has, that he will be taken into custody on

14  some warrants.  So there's going to be a period of time where

15  he's not going to be monitored by location monitoring between

16  his release from that facility and us coordinating with him to

17  come to our office for the location monitoring hookup.

18         THE COURT:  So I should impose a restriction that he

19  needs to contact you as soon as he's released from --

20         PRETRIAL OFFICER:  Immediately.

21         MR. SMITH:  Within 24 hours is what I was going to

22  suggest.

23         THE COURT:  Yeah.

24         PRETRIAL OFFICER:  Yes.

25         MS. LAZO:  Judge, if I can ask Ms. Bowen, the location

—————2:18-cr-055-APG-GWF - August 8, 2018—————

1   monitoring, is that the radio frequency or GPS?  I missed it.

2          PRETRIAL OFFICER:  That's the GPS.

3          MS. LAZO:  GPS.

4          THE COURT:  In fact, what I'll do on the location

5   monitoring is I'm just going to give Pretrial Services whatever

6   discretion they feel like they need.  So if you think GPS, if

7   you decide radio frequency's fine, I'll let you make that

8   determination.  I'll give Pretrial Services the discretion to

9   do whichever one they deem most appropriate.

10         MS. LAZO:  And, Judge, would he also be permitted to

11  not be under home confinement, obviously, for purposes of

12  attorney visits, medical visits, religious and work?

13         THE COURT:  Yeah.  That's what she -- let me

14  double-check.

15         MR. SMITH:  That's what she said, Judge.

16         MS. LAZO:  Oh, I may have missed it.  I'm sorry.

17         THE COURT:  Yeah.  The -- at all times except for

18  employment, education, religious services, medical, substance

19  abuse or mental health treatment, attorney visits, court

20  appearances, court-ordered obligations, or other activities

21  pre-approved by Pretrial.  So we do have employment.  We do

22  have attorney visits.  We do have church and things.

23         MS. LAZO:  I wasn't listening, obviously.

24         THE COURT:  That's fine.

25         MS. LAZO:  And then, Judge, would you -- it seems that

———2:18-cr-055-APG-GWF - August 8, 2018———

1   you're going to impose that condition.  Would you consider

2   relaxing that condition if he shows compliance let's say after

3   30, 45 days?

4             THE COURT:  I will allow the defense to file a motion

5   to terminate that condition.

6             MS. LAZO:  Okay.

7             THE COURT:  And we'll take a look at it at that point.

8   If you can demonstrate good compliance and Pretrial says yeah,

9   we think he's cool, we don't need to do this any further, I'll

10  give that consideration.  Certainly, the government will have

11  an opportunity to respond to that.

12            MR. SMITH:  Thank you, Your Honor.

13            MS. LAMBROSE:  Thank you, Your Honor.

14            THE COURT:  Yeah.  But, yeah, I would wait at least

15  45 days before filing that motion.

16            All right.  And the condition we just mentioned, just

17  to be clear, is if he's taken into state custody upon release

18  from here, that the defendant shall notify and report to

19  Pretrial here within 24 hours of release from state custody.

20  So that way --

21            MS. LAMBROSE:  Understood, Your Honor.  Yes.

22            THE COURT:  So that way when you get things cleared up

23  over there, let them know now you're out and that way there's

24  not -- they're not worried you've absconded at that point.

25            MS. LAZO:  He's very good at staying in contact with

2:18-cr-055-APG-GWF - August 8, 2018

1  us, Judge.

2          THE COURT:  I'm glad.  All right.

3          I will impose those conditions.  I find by clear and

4  convincing evidence that the defendant's appearance and the

5  safety of the community can be ensured by releasing on a PR

6  bond with those conditions.  So we'll prepare the PR bond, have

7  that executed today.  We've got the hearing -- sentencing date

8  already set.

9          Is there anything else I can address for the parties

10  today?

11          MR. SMITH:  Judge, just procedurally, I'm going to ask

12  that you order the defendant personally to show up for his

13  sentencing because, candidly, I think that that's an element if

14  he fails to appear and if the government decides that it wants

15  to pursue criminal charges.  So I'm asking that in open court

16  you just inform him personally that his sentencing date is

17  November 15th at 10:30 and that he has to appear per your

18  order.

19          THE COURT:  No.  I think that's a fair comment.

20          You do need to show up for sentencing and if you

21  don't, that could be a violation of -- that will be a --

22  considered a violation of your release conditions.

23          Do you understand?

24          THE DEFENDANT:  I'll be here.

25          THE COURT:  I presume so.  All right.

―――2:18-cr-055-APG-GWF - August 8, 2018―――

1          MS. LAMBROSE:  That was assumed on our side as well.

2          THE COURT:  Just to be clear.

3          MR. SMITH:  Thanks, Judge.

4          THE COURT:  All right.  Anything else from the defense

5   we need to address today?

6          MS. LAMBROSE:  Not from the defense.  Thank you,

7   Your Honor.

8          THE COURT:  Nothing else from --

9          MS. LAZO:  No, sir.  Thank you, Judge, for

10  accommodating it earlier, too.

11         THE COURT:  Hang on one second.

12     (Off-record discussion.)

13         THE COURT:  Oh, yeah.  We're going to -- I'll have you

14  interlineate the Plea Agreement, time.  I'll have that brought

15  out to you after we've recessed so we'll have that on the

16  record.

17         Officer Bowen, anything else you want Pretrial to

18  address this morning?

19         PRETRIAL OFFICER:  No, Your Honor.

20         THE COURT:  Last chance.  Anybody?  We good?

21         MR. SMITH:  I think we're good, Judge.

22         THE COURT:  All right.  We're in --

23         MS. LAMBROSE:  Thank you so much, Your Honor.

24         THE COURT:  We're in recess on this matter.  Thank you

25  all.

56

1          MR. SMITH:  Thank you.

2          THE COURT:  All right.  I don't want to see you before

3    sentencing.

4       (Proceedings adjourned at 10:27 a.m.)

5

6                         --oOo--

7                COURT REPORTER'S CERTIFICATE

8

9      I, Heather K. Newman, Official Court Reporter, United

10   States District Court, District of Nevada, Las Vegas, Nevada,

11   do hereby certify that pursuant to Section 753, Title 28,

12   United States Code, the foregoing is a true, complete, and

13   correct transcript of the proceedings had in connection with

14   the above-entitled matter.

15

16   DATED:  12-21-2018          /s/ Heather K. Newman
                             Heather K. Newman, CCR #774
17                           OFFICIAL FEDERAL REPORTER

18

19

20

21

22

23

24

25

HEATHER K. NEWMAN, RPR, CRR, CCR 774 - (702) 471-0002