—2:18-cr-055-APG-GWF - March 1, 2019—

1              UNITED STATES DISTRICT COURT

2                  DISTRICT OF NEVADA

3

4    UNITED STATES OF AMERICA,        )
                                      )  Case No. 2:18-cr-055-APG-GWF
5              Plaintiff,             )
                                      )  Las Vegas, Nevada
6         vs.                         )  Friday, March 1, 2019
                                      )  Courtroom 6C, 9:10 a.m.
7    CEMONE CHAMPAGNE LEWIS,          )
                                      )  SENTENCING HEARING
8              Defendant.             )
     _____)  C E R T I F I E D   C O P Y
9

10

11            REPORTER'S TRANSCRIPT OF PROCEEDINGS

12         BEFORE THE HONORABLE ANDREW P. GORDON,
                 UNITED STATES DISTRICT JUDGE

13

14

15   APPEARANCES:

16   For the Plaintiff:

17        UNITED STATES ATTORNEY'S OFFICE
          BY:  PHILLIP N. SMITH, JR., AUSA
18        501 Las Vegas Boulevard South, Suite 1100
          Las Vegas, NV 89101
19        (702) 388-6336

20   (Appearances continued on Page 2)

21   COURT REPORTER:

22        Heather K. Newman, RPR, CRR, CCR #774
          United States District Court
23        333 Las Vegas Boulevard South, Room 1334
          Las Vegas, Nevada 89101
24        (702) 471-0002 or HN@nvd.uscourts.gov

25   Proceedings reported by machine shorthand; transcript produced
     by computer-aided transcription.

2:18-cr-055-APG-GWF - March 1, 2019

1    APPEARANCES CONTINUED:

2    For the Defendant:

3           GABRIEL L. GRASSO, P.C.
            BY:  GABRIEL L. GRASSO, ESQ.
4           411 South Sixth Street
            Las Vegas, NV 89101
5           (702) 868-8866

6    Also present:

7           Erica Strome
            United States Probation Office
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

———2:18-cr-055-APG-GWF - March 1, 2019———

1          LAS VEGAS, NEVADA; FRIDAY, MARCH 1, 2019; 9:10 A.M.

2                              --oOo--

3                      P R O C E E D I N G S

4          COURTROOM ADMINISTRATOR:  All rise.

5          THE COURT:  Thank you.  Please be seated, everyone.

6          COURTROOM ADMINISTRATOR:  United States vs.

7    Cemone Champagne Lewis, 2:18-cr-055-APG-GWF.  This is the time

8    set for imposition of sentence.

9              Counsel, please make your appearances.

10             MR. SMITH:  Good morning, Your Honor, Phillip Smith

11   appearing on behalf of the United States.

12             THE COURT:  Good morning.

13             MR. GRASSO:  Good morning, Your Honor, Gabe Grasso on

14   behalf of Mr. Lewis.

15             THE COURT:  Good morning.

16             Good morning, Mr. Lewis.

17             THE DEFENDANT:  Good morning, sir.

18             THE COURT:  On August 8th -- oh, go ahead.

19      (Attorney-client discussion.)

20             THE COURT:  Go ahead, if you -- chat some more.  I

21   know we got a last minute PSR so if you need to go over it, go

22   ahead.  Take your -- take your time.

23             MR. GRASSO:  Can I have a minute, Your Honor?

24             THE COURT:  Absolutely.  Yeah.  No.  Absolutely.

25      (Attorney-client discussion.)

2:18-cr-055-APG-GWF - March 1, 2019

1        MR. GRASSO:  Go ahead, Your Honor.  Thank you.

2        THE COURT:  Have you had a chance to go over the

3   revised Pre-Sentence Report?

4        MR. GRASSO:  I have, Your Honor.

5        THE COURT:  Okay.  Great.

6        On -- Mr. Lewis, on August 8th of this year you -- of

7   last year you pleaded guilty to the charge of Felon in

8   Possession of a Firearm and this is the time set for imposition

9   of sentence upon you.

10       Before we get to that, let me ask both counsel, there

11  is also a pending revocation of pretrial release.  Is that now

12  moot since we're here for sentencing or what's the status or

13  what's the impact of that on this?

14       MR. GRASSO:  Obviously, Your Honor, depending on -- I

15  mean, once -- I'm assuming once the Court sentences -- whether

16  the Court sentences him to time served or 27 months or

17  whatever, the pretrial is over with.  So, I think it's moot.

18       THE COURT:  Seems to me that might be the case

19  unless -- I -- Mr. Smith.

20       MR. SMITH:  No, I agree with that, Judge.

21       THE COURT:  All right.  So I'm going to hold off on

22  addressing the revocation issue for now and we'll figure out

23  what we do after sentencing.

24       All right.  So, Mr. Grasso, you've had a chance to

25  read the updated Pre-Sentence Investigation Report?

2:18-cr-055-APG-GWF - March 1, 2019

1          MR. GRASSO:  I have, Your Honor.

2          THE COURT:  And have you had a chance to discuss it

3   with Mr. Lewis?

4          MR. GRASSO:  I have.

5          THE COURT:  Any factual errors in the report that need

6   to be corrected --

7          MR. GRASSO:  No, Your Honor.

8          THE COURT:  -- that you're aware of?

9          MR. GRASSO:  He's -- he's -- we were going over just

10  the fact that, you know, they -- in the new report, it was

11  added, the new charge was added and whether that charge is

12  being counted for his criminal history points.  Although he --

13  but he hasn't -- I've explained to him that he hasn't been

14  convicted of that charge -- or, well, he's pled guilty, he

15  hasn't been sentenced on it yet, so the 2 extra points aren't

16  in there yet.

17         THE COURT:  1 extra point is my thought.

18         MR. GRASSO:  The two extra levels; right?

19         MR. SMITH:  It's 1 point.  He gets 1 point for

20  pleading guilty.

21         THE COURT:  Pull --

22         MR. GRASSO:  Yeah.

23         THE COURT:  I can't hear you, Mr. Smith.  Pull the

24  microphone over.

25         MR. SMITH:  It's 1 point for pleading guilty,

2:18-cr-055-APG-GWF - March 1, 2019

1    Your Honor.

2            MR. GRASSO:  Yeah.  There is that 1 point, but it

3    would be worse if this happened after he was sentenced on the

4    case.

5            MR. SMITH:  That is correct.

6            THE COURT:  Okay.  And I know there -- I notice, on

7    Page 20 of the Pre-Sentence Report, there are two other

8    additional charges still pending against him for possessing a

9    gun by a prohibited person.

10           Those have not been addressed yet, apparently.

11           PROBATION OFFICER:  No, Your Honor.  The one in

12   Paragraph 66 appears to be related to the instant offense and I

13   do believe that there was notes in the minutes that it could be

14   a duplicative case to the federal case, so it's possible that

15   that one might be dismissed.

16           THE COURT:  Okay.  But then the one in 65 is still

17   pending; correct?

18           PROBATION OFFICER:  Correct.

19           MR. GRASSO:  Your Honor, his state charges are done --

20           THE COURT:  So what about the --

21           MR. GRASSO:  -- from what I understand.

22           THE COURT:  So what about the case referenced in

23   Paragraph 65?  There's a bench warrant because he failed to

24   appear -- two bench -- he was arrested in August for that one,

25   released on an OR and there's negotiations pending scheduled

————2:18-cr-055-APG-GWF - March 1, 2019————

1    for April 22nd?

2             MR. SMITH:  So, Judge, if I may, I -- the arrest in

3    Paragraph 65 is actually the same conduct as in this case, the

4    one that's before Your Honor.

5             THE COURT:  Okay.

6             MR. SMITH:  The arrest in 66 is a different incident

7    that, it's my understanding, is, in fact, still pending.

8             THE COURT:  Okay.  All right.  Okay.  You're right.

9    65 I see is offense conduct.  So 65 would be this one.

10            MR. SMITH:  Correct.

11            MR. GRASSO:  Yeah.  My --

12        (Attorney-client discussion.)

13            MR. GRASSO:  Your Honor, my understanding is that's

14   correct, technically correct, but the Paragraph 66 charge was

15   part of the global -- the global resolution in his state case

16   and once he's sentenced on the burglary charge that he got that

17   he pled to in the state case out of all these incidents that

18   happened in November of last year, this charge is going to be

19   dismissed.

20            THE COURT:  Officer Strome?

21            PROBATION OFFICER:  Your Honor, I have the dockets

22   from both of them from the 26th, so that's the most recent that

23   I've ran it.  It doesn't --

24            THE COURT:  26th of February?

25            PROBATION OFFICER:  Yes.  If you would like to see

1  them.

2          THE COURT:  And -- you have them for both of them?

3          PROBATION OFFICER:  Yes.

4          THE COURT:  Okay.

5          MR. GRASSO:  Do you have the minutes?

6          THE COURT:  Show those to Mr. Grasso if you would,

7  please.

8          PROBATION OFFICER:  Okay.

9          MR. GRASSO:  I'm going by what my client's telling me,

10 Judge, because I don't -- I'm not representing him in state

11 court.

12          THE COURT:  Understood.

13      (Attorney-client discussion.)

14          PROBATION OFFICER:  I believe both of them just say

15 "pending negotiations."

16          THE COURT:  Okay.

17          MR. GRASSO:  You know, being pretty familiar with

18 this, it seems, Your Honor, that he's -- he's indicating to me

19 that those charges, you know, they basically worked everything

20 out, especially since the -- he's being represented by --

21          THE DEFENDANT:  Worked it out over here, not in the

22 state.  This was a part of this deal.  I pled guilty over here

23 to dismiss both of the charges in the state.

24          MR. GRASSO:  They're both owning a gun by a prohibited

25 person, Your Honor.

2:18-cr-055-APG-GWF - March 1, 2019

1           THE COURT:  Correct.

2           MR. GRASSO:  Except --

3           THE COURT:  And appear to be 9 days apart, which is

4    what I found a little shocking.

5           MR. SMITH:  Well, Judge, that's because that's a

6    separate event.

7           THE COURT:  Right.  I know, the -- Paragraph 65, on

8    February 1st, is the offense for this case.

9           MR. SMITH:  Yes, sir.

10          THE COURT:  And then it appears that 9 days later, on

11   February 10th of that year, he was arrested again.

12          MR. SMITH:  Correct.

13          THE COURT:  For again, possession, in a different

14   case?

15          MR. SMITH:  Yes, sir.

16          THE COURT:  So there're two gun possession charges

17   within 9 days, two separate events.

18          MR. SMITH:  Yes, sir.

19          THE COURT:  That's what I found a little odd, if not

20   worse than odd.  Troubling I would say.

21       (Attorney-client discussion.)

22          MR. GRASSO:  Yeah, it doesn't say.  I -- I --

23       (Attorney-client discussion.)

24          MR. GRASSO:  It appears that his state sentencing,

25   Your Honor, from what I see from the Guilty Plea Agreement,

2:18-cr-055-APG-GWF - March 1, 2019

1  which I see these every day, doesn't say anything about any

2  other charges being dismissed.  I mean, it just simply says

3  he's pleading in the case that arose out of his arrest in

4  November where the SWAT team came out and all that stuff, he's

5  pleading to one charge, which is an attempted burglary, which

6  is a C felony, and that's it.

7            THE COURT:  And that's the barricade situation where

8  he barricaded himself and the SWAT came and got him out?

9            MR. GRASSO:  Right.  And the interesting part is,

10  the -- his pretrial -- one of his addresses for pretrial was

11  that address.

12            THE COURT:  Pull the microphone up if you would.

13            MR. GRASSO:  One of his addresses for pretrial here

14  was the address that he's charged with burglarizing, so, he --

15  this was an address that he's lived at, but that never stopped

16  anybody from working out a deal, you know, a favorable deal,

17  let's say, to drop other charges, but that's what's going on.

18            THE COURT:  Yeah.  No.  Given the scenario, I was

19  intrigued to say the least to see that they -- he pled to

20  burglary, or attempted burglary, but I don't disagree with you

21  that sometimes that's how things work out.  But it seems to be

22  separate and apart from the two other gun charges that

23  apparently are still pending.  But I'm not sentencing him on

24  those two other gun charges.  That's for the state court to

25  deal with.  That's their deal, not mine, although, as Mr. Smith

─────2:18-cr-055-APG-GWF - March 1, 2019─────

1  points out, the one in Paragraph 65 related to this one may go

2  away once I sentence in this case but the Paragraph 66 one is a

3  different issue that Mr. Lewis will have to address in state

4  court.

5          Okay.  All right.  So we got that cleared up.

6          Mr. Lewis, did you have a chance to read through the

7  Pre-Sentence Report?

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  And pull the microphone up if you would,

10 please.  Just pull it closer to you.

11         THE DEFENDANT:  Yes, sir.

12         THE COURT:  Thank you.

13         And you discussed it with Mr. Grasso?

14         THE DEFENDANT:  Yes, sir.

15         THE COURT:  Was he able to answer all your questions

16 about that Pre-Sentence Report?

17         THE DEFENDANT:  Yes, sir.

18         THE COURT:  And are you aware of any factual errors in

19 that report that need to be corrected?

20         THE DEFENDANT:  Yes, sir.

21     (Attorney-client discussion.)

22         THE DEFENDANT:  Oh, there's no errors.

23         THE COURT:  Okay.  All right.  So in determining the

24 appropriate sentence, there's a lot of things I have to

25 consider.  First, I look at the statute that Congress has

2:18-cr-055-APG-GWF - March 1, 2019

1    passed to determine what the maximum sentence is and to

2    determine if there's any mandatory minimum I have to enforce.

3           Here, there's no mandatory minimum, and the maximum

4    term of imprisonment is 10 years.  I can impose a term of

5    supervised release of up to 3 years, a fine of up to $250,000,

6    and I also have to impose a special assessment of $100.

7           I then look at the sentencing guidelines adopted by

8    the United States Sentencing Commission, and those are

9    guidelines to help judges like me come up with an appropriate

10   sentence.  They're also designed to help judges come up with a

11   sentence that keeps similarly situated defendants across the

12   country getting somewhat similar sentences.  The guidelines

13   recommend a sentence based on a lot of factors, but primarily

14   it's the nature of the offense you've committed and your

15   personal criminal history.  Based on those two broad

16   categories, the guidelines then recommend a range I have to

17   consider.  I'm not required to follow that, but I have to at

18   least consider it.

19          Here, the guidelines -- Probation calculated the

20   guideline Offense Level to be 14. . .

21          Hang on a second.

22      (Brief pause in proceedings.)

23          THE COURT:  With no reduction for acceptance of

24   responsibility, which puts you at a Base Level of 14, and that

25   is consistent with the parties' Plea Agreement because the

—————2:18-cr-055-APG-GWF - March 1, 2019—————

1    Plea Agreement didn't have any calculations, my recollection.

2            MR. SMITH:  Correct, Judge.

3            THE COURT:  All right.  Probation calculated you as

4    having 7 criminal history points, which puts you in Category

5    III.

6            So with a Total Offense Level of 14 and a History --

7    I'm sorry, Category IV.  With a Total Offense Level of 14 and a

8    History Category of IV, the guidelines recommend a sentence in

9    prison of 27 to 33 months, plus 1 to 3 years of supervised

10   release, and a fine in the range of 7,500 to $75,000.

11           There's another set of factors I have to consider

12   after the guidelines.  I'll get to those in a minute, but first

13   let me check.  I haven't seen any objections to the report.

14   Are there any objections today from either side?

15           MR. GRASSO:  No, Your Honor.

16           THE COURT:  Mr. Smith, any objections to the

17   Pre-Sentence Report?

18           MR. SMITH:  No, sir.

19           THE COURT:  All right.  I have read the Pre-Sentence

20   Report, and the Indictment, and the Plea Agreement, and the

21   papers related to the request for revocation of pretrial

22   release.  If there are any additional comments, I'll entertain

23   those now.

24           Mr. Smith.

25           MR. SMITH:  Your Honor, for the record, because of the

2:18-cr-055-APG-GWF - March 1, 2019

1    defendant's commission and subsequent plea to a new felony

2    offense, the government is not bound by the terms of the

3    Plea Agreement that required it to recommend a sentence for

4    time served.  So to that end, I am going to agree with

5    Probation's recommendation in toto and, so, I'm going to ask

6    that you do impose a 27-month sentence and as also recommended

7    by the PSR, to order that sentence to run consecutive to his

8    state court case.

9         So let me briefly touch upon, Your Honor, the reasons

10   why I think you should impose a guideline sentence.  And I

11   would note for the record that despite the fact that I could

12   probably stand here with a straight face and make an argument

13   as to why the defendant should receive a sentence that is

14   higher than the low end of the guideline range, I'm still going

15   to nevertheless concur with Probation's recommendation that you

16   sentence him to the low end but I am going to entreat upon the

17   Court that you do impose a guideline range sentence.

18        Your Honor, when we look at the defendant's criminal

19   history, it is rather extensive.  I won't go into excruciating

20   detail, but suffice it to say that it looks like his first

21   serious foray into the criminal justice system, at least in

22   that it resulted in some type of adjudication, was back at age

23   19 when he was busted for essentially dealing crack cocaine.

24   Ultimately, he received probation in that case.  That probation

25   was terminated unsatisfactory and, of course, that would be the

2:18-cr-055-APG-GWF - March 1, 2019

1  first instance of multiple, repeated grants of leniency from

2  various judges in various states where the defendant did not

3  rise to the occasion and, instead, continued to either commit

4  new crimes or just simply not take the criminal justice system

5  seriously.

6           After this conviction for Possession of a Controlled

7  Substance in 2009, the next thing we see is a -- appears to be

8  a felony conviction for Possessing a Fraudulent ID Card.  In

9  that case, he was granted probation.  In that case, he violated

10  probation and that probation was ultimately terminated

11  unsatisfactory.

12           Then after that, we have this aggravated unlawful use

13  of a weapon, which arguably could be considered a crime of

14  violence but the government opted not to pursue that in terms

15  of trying to reach a negotiation, but nevertheless, it does

16  involve some serious conduct where, among other things, it

17  appears the defendant pointed a loaded firearm at a police

18  officer.  That resulted in him being actually sent to

19  36 months -- or sentenced to 36 months in prison where then

20  ultimately he was paroled, but then, once again, we see that he

21  could not abide by conditions because it appears he was

22  returned to prison on some kind of parole violation and then

23  ultimately discharged a couple of months later.

24           I'd also note that in that particular conviction the

25  PSR writer notes that during his brief incarceration, he

2:18-cr-055-APG-GWF - March 1, 2019

1  sustained nine minor and four major disciplinary infractions.

2  So, again, this just shows a pattern of a person who simply

3  just, unfortunately, does not get it.

4        Then, of course, we come to what perhaps is the most

5  aggravating factor in this case, Your Honor, and that is the

6  fact that after -- pursuant to the parties' negotiation, you

7  released the defendant after he pled guilty and if I recall, I

8  think you kind of warned the defendant that he needed to stay

9  out of trouble, I think we all did, but lo and behold, he

10 commits a new offense.  And now there can't be any argument

11 from the defendant that he didn't do it or, you know, I'm not

12 convicted of it, this is still an arrest, he pled guilty to

13 committing an attempt burglary.  And while I know us lawyers in

14 here may disagree with whether or not it truly constituted a

15 burglary, it cannot be denied that according to the information

16 provided to Probation that there was some kind of domestic

17 dispute that ultimately resulted in Mr. Lewis' romantic

18 partner, or ex-child's [sic] mother, or ex-girlfriend, or

19 however you want to characterize her as having physical

20 injuries consistent with her account and digital photos being

21 taken of the red marks and scratches around her neck.  So

22 obviously while no one in this room other than Mr. Lewis was

23 present, there is some objective evidence that indicates that

24 something happened, coupled with the fact that the defendant

25 ultimately pled guilty to a new felony offense, which, as I

—————2:18-cr-055-APG-GWF - March 1, 2019—————

1    stated earlier, is an aggravating factor here in this case.

2            Then if you look at his other criminal conduct for

3    which, candidly, or -- excuse me -- concededly, he wasn't

4    convicted of, I do believe nevertheless that pursuant to

5    statute you can consider this and it -- you know, if I just run

6    down some of the most important further context that the

7    defendant had with the criminal justice system dating back to a

8    10-year-old arrest for -- strike that -- an arrest for robbery

9    when he was 10 years old.  Another arrest for robbery when he

10   was 15, in 2006.  Then an arrest for criminal sexual abuse at

11   age 19.  Then an arrest for battery at age 20; an arrest for

12   manufacturing or delivering cocaine in a public high school at

13   age 23; an arrest for domestic battery bodily harm at age 26;

14   an arrest for Felon in Possession of a Firearm -- not talking

15   about this case -- at age 26; another arrest for aggravated

16   battery and discharging a firearm at age 26 and then, of

17   course, there's the arrest for possessing a firearm again

18   9 days after he committed this offense.

19           And then the details in that case include a statement

20   including by the -- included by the PSR writer that indicates,

21   "Further investigation revealed" -- and for the record, I'm

22   referencing Paragraph 66 of the PSR -- "Further investigation

23   revealed that the defendant had several videos and photos on

24   his social media Instagram page under the name of kingyella74

25   in which he possessed firearms, specifically while shooting rap

2:18-cr-055-APG-GWF - March 1, 2019

1   videos."

2          So, Judge, I mean, this is a guy who knows that he

3   can't possess a firearm yet continually does so.  And this is a

4   guy who shows absolutely no respect for the law despite being

5   given multiple grants of leniency by various courts, including

6   your own because you didn't have to go along with the releasing

7   him from custody.  You did it in order to presumably give

8   Mr. Lewis some kind of incentive to conform his conduct with

9   what you would expect for a person who has pled guilty to a

10  crime in federal court and is awaiting sentencing, but he

11  didn't do that.  So all of the evidence in front of you,

12  objectively, suggests to you that you need to impose a sentence

13  that is going to hopefully instill or encourage respect for the

14  law and then provide just punishment for the offense.  So

15  that's why I think, humbly, Your Honor, that a guideline

16  sentence is warranted here.

17         I am respectfully requesting you impose a low end

18  sentence, that you order it consecutive to the pending state

19  court case, which -- because that case is not being used as

20  relevant conduct for this case.  It is a completely separate

21  offense and, in fact, I believe the guidelines instruct that

22  you should run that -- this sentence consecutive to whatever

23  he's going to get in state court and, of course, statutes of

24  the United States allows to you do that despite the fact that

25  it is a yet-to-be-imposed sentence and it is anticipated, but

─────2:18-cr-055-APG-GWF - March 1, 2019─────

1   for all those reasons, Your Honor, I respectfully request you

2   follow the recommendation from Probation and sentence the

3   defendant accordingly, along with 3 years of supervised

4   release.

5          To the extent that you are inclined to give the

6   defendant some leniency, then I would ask you to consider

7   imposing a -- somewhat of a different punitive sanction, which

8   is to consider imposing a fine upon the defendant.  The reason

9   why I'm suggesting that is because by his own statements he

10  claims to be a successful rap artist.  Well, if that's the

11  case, then the defendant is in a position, unlike most

12  defendants who are charged with this case who come before you,

13  in that he has a punitive stream of income in the future.  So

14  I'd ask you to consider that when also crafting the appropriate

15  sanction in this case.

16         THE COURT:  Let me -- let me ask you or confirm, my

17  ability to run this consecutive, if that's where I go, to the

18  state court.  I know I -- I can't run it to a yet-to-be-imposed

19  federal sentence.

20         MR. SMITH:  Correct.

21         THE COURT:  But my recollection is the case law says I

22  can run it consecutive to a yet-to-be-imposed state court

23  sentence.

24         MR. SMITH:  You can, Judge.

25         THE COURT:  That's what I was -- my recollection as

2:18-cr-055-APG-GWF - March 1, 2019

1   well.  Okay.

2           Thank you.  I cut you off.  Anything further,

3   Mr. Smith?

4           MR. SMITH:  No, sir, thank you.

5           THE COURT:  Thank you.

6           Mr. Grasso.

7           MR. GRASSO:  Yes, sir, Your Honor.

8           I guess this case goes down in my book as beware when

9   you get a call from CJA that says, hey, it's just for

10  sentencing.  So, I didn't represent Mr. Lewis in his case, but

11  I -- I would just want to point out and I -- and I -- you know,

12  this is one of those cases where I -- I've been doing this long

13  enough to know that this is one of those cases where I'm not

14  the guy with the leg up.  I have an uphill battle here to make

15  an argument to the Court about the sentence to be imposed, but

16  I will point out a couple of things, that the government has

17  done a pretty detailed job in going through today with the

18  Court as to Mr. Lewis' sort of lengthy criminal background,

19  whether they were convictions or arrests.  And I leave it up to

20  the Court on both -- I'm well aware of how this Court has been

21  doing its job and I know that the Court's not going to take

22  arrest without conviction that -- as seriously as a conviction,

23  and I understand that and I'm not going to sit here and argue

24  those points, but clearly Mr. Lewis has had contact with the

25  criminal justice system and my only point is if that's the

2:18-cr-055-APG-GWF - March 1, 2019

```
 1   case, then what was it about this case -- and I wasn't part of
 2   the negotiations -- what was it about this case that allowed
 3   the government to move forward and to have approval for a
 4   time-served recommendation.  So there had to have been
 5   something to do with the facts of the case not being like --
 6   you know, I was in front of -- early on in my career when I
 7   started off as a public defender back in '89, I had a -- I was
 8   in front of a judge named John Miller who ended up becoming the
 9   Godfather of one of my kids, and although he hardly ever let me
10   win, a Bench Trial, in Juvenile Court, and he would always say,
11   well, there's half a loaf here, the state has half a loaf,
12   that's what he'd say when he was thinking about possibly ruling
13   for the defendant.  And that's what I think may have been
14   happening here, that the factual basis of this -- this case, so
15   I'd like the Court to take that into account, that I --
16   understood that he has an extensive background, but there's
17   something about this case that allowed the government to say,
18   okay, we're going to give this guy time served as opposed to
19   taking it to the wall and saying, this guy's got such a bad
20   background that we're going to try to go all out on him.  So
21   there's something there.
22           As for the -- I see the most -- the most. . . serious
23   part of everything that's happened here is, in my opinion and
24   with my experience is, that this Court allowed Mr. Lewis to be
25   at liberty after his plea, which is a sort of solemn thing that
```

1    a defendant has to follow, and Mr. Lewis let this Court down.

2    That's -- that, to me, is the most -- if I were a judge, I

3    would be looking at the most seriously, that that should not

4    have happened.  So -- so -- and that's something that I have

5    to -- you know, that I really can't get around in this case.  I

6    can't say, Your Honor, you should just give him leniency even

7    though he did that.  But I think if the Court takes everything

8    into consideration and how this case was originally worked out,

9    understood that there's a -- a state case that he's going to be

10   sentenced to, understanding that we have a situation where the

11   government's asking for the Court to -- you know, he's --

12   because of the state case, he's lost his acceptance, he's lost

13   his -- the advantage of that on the guidelines, so that's

14   affecting him and I'd ask the Court to take that into

15   consideration when considering whether to -- because I don't

16   think the Court has to say anything regarding concurrent or

17   consecutive; the Court can just sentence him and if the Court

18   doesn't say I'm going to make sure it's consecutive to his --

19   under the case law, consecutive to his upcoming state court

20   sentence, if the Court just remains silent on that, then it can

21   be up to the state court judge to say I'm going to run this

22   consecutive or concurrent to his federal sentence, and that's a

23   separate argument that has to be made by his public defender.

24          So, I think considering the fact that the whole reason

25   this case is sort of, for lack of a better term, blown up in

2:18-cr-055-APG-GWF - March 1, 2019

1    Mr. Lewis' face, you know, that being his doing, but blown up

2    in his face, is the fact that the case that the state -- the

3    government's now asking you to run consecutive to is a case

4    that's causing all this to happen and why he's not getting his

5    deal.  So I'd ask him -- ask the Court to take that into

6    consideration when deciding whether to say anything about it

7    being consecutive to his state court case.

8            I would -- I think the only reasonable thing I can ask

9    for, Judge, and I'm not going to sit here and ask the Court,

10   with everything that's gone by, for the original I believe it

11   was time-served or 15-month sentence, I don't know if it was

12   15 -- or if it was just timed served.

13           THE COURT:  It was time served in the original

14   Plea Agreement.

15           MR. GRASSO:  Right, and I -- I know that before he

16   sort of, on the guidelines, was somewhere around 15 months

17   instead of 27 months.  I know he's done -- and considering the

18   time served here, Judge, meaning, I've worked it out and I

19   don't -- and I -- and that's when the Court walked into the

20   courtroom I was with Probation trying to work out the time

21   served numbers.  Here's another issue, and that is, since

22   March 28th of 2018 -- I mean, March -- March 5th of 2018, when

23   he got arrested in this case, he was in custody for 165 days,

24   and that includes the 7 days since the 22nd of February when he

25   was brought back from CCDC to federal custody.  So it's been --

———————2:18-cr-055-APG-GWF - March 1, 2019———————

1  it was last Friday, so that's 7 days.  So, that's 165 days.

2  That's. . .

3          PROBATION OFFICER:  156.  156 days.

4          MR. GRASSO:  156?

5          PROBATION OFFICER:  From March 5th, 2018, to

6  August 8th, 2018.

7          MR. GRASSO:  So August 8th.  Right, but then he's got

8  7 more days.

9          PROBATION OFFICER:  So 156 plus the 7 days from

10  February 22nd to today.

11          MR. GRASSO:  Okay.  So that's 163?

12          MR. SMITH:  Correct.

13          MR. GRASSO:  Okay.  Instead of 165.  Okay.  I missed

14  by a couple days.  So it's 163.

15          There's another issue, Judge, which is, this is

16  obviously -- it's completely to the discretion of the Court, he

17  spent from November 13th until the 22nd of February in state

18  custody.  That was 101 days that he spent.  And just so the

19  Court is aware, he's -- he was -- he and I had a conversation

20  about that time, and unlike Pahrump, which is actually one of

21  the more pleasant, if you're going to call it that way, places

22  to actually spend time compared to CCDC and other places in the

23  county, he spent his time -- those 101 days what they call 23

24  and 1, which is 23 hours locked down in confinement and 1 hour

25  out.  And he says it's the first time in his life that he had

———2:18-cr-055-APG-GWF - March 1, 2019———

1  to start taking psychiatric medication.  So he did do some

2  pretty hard time in that -- in CCDC.

3          So, based on that, Judge, my argument to the Court is

4  to consider a sentence somewhere between the 15 months or so

5  that he originally scored, regardless of the time served, and

6  the 27 months that the -- that the government and Probation are

7  asking for, and with that, I would sit down and submit it to

8  the Court.

9          Thank you, Your Honor.

10         THE COURT:  Mr. Lewis, you're entitled to speak here

11 in court if you'd like.  You're not required to, but if there's

12 anything you'd like to say, I'll listen to you at this time.

13         THE DEFENDANT:  First of all, I would like to say I'm

14 sorry.  I went home and I was trying my best to do the right

15 thing, take care of my kids, do my music.  I was on house

16 arrest for 70 days and as soon as I got off house arrest, the

17 mother of my child, she just spiraled out.  So we wasn't seeing

18 eye to eye and then she was trying to -- she put -- trying to

19 put me out and then all this stuff had happened, but I would

20 like to say that I've been through a lot in my life.  I come

21 from Chicago where all I seen is killing and people trying to

22 kill me every day.  You know what I'm saying?  I got four kids

23 out there.  I moved to Vegas to change my life, but somehow I

24 still -- yes, I did get -- get a gun because people be after

25 me, you know what I'm saying?  But the way they got the gun was

———2:18-cr-055-APG-GWF - March 1, 2019———

1   illegally and I had license and registration and they --

2   they -- they did police misconduct, cussed me out, called me

3   all type of names and all type of stuff and stuck they hands

4   inside my drawers on camera when this case originally happened,

5   so, that's --

6          THE COURT:  Is that -- is that the first part of the

7   music video you made when they're busting you on the head of

8   the car?

9          THE DEFENDANT:  Yeah.

10         THE COURT:  I saw it.

11         THE DEFENDANT:  And the words that they told me and

12  stuck his hands in my drawers, yeah, I had it, but what they

13  did, um, they never Miranderized [sic] me.  They sat there.

14  They pulled me over and said the reason they stopped me was

15  for -- because I was parked in a handicapped spot so they

16  prolonged the stop and the same detective on both of my cases,

17  he's on this new case, too, so that's the reason I didn't open

18  my door when they came to the house, so, I felt like I was

19  being set up.  So, I told them to get a search warrant.  It

20  wasn't that I was barricading myself in the house; I'm in the

21  house with my daughter, you know, and I told them my daughter

22  was in there and they still -- they still blew the door off the

23  hinges and they never -- they never presented a search warrant.

24  But I would like to say that --

25         THE COURT:  But you're posting on YouTube.

—2:18-cr-055-APG-GWF - March 1, 2019—

1           THE DEFENDANT:  Hum?

2           THE COURT:  But you were posting on YouTube the whole

3    time.  You were sending text messages to your girlfriend that

4    you were going to do suicide by cop.

5           THE DEFENDANT:  Well, I was on -- I was on Instagram

6    when they came to the door and I said I didn't have to open my

7    door because they didn't have no search warrant.

8           THE COURT:  Um-hmm.

9           THE DEFENDANT:  So, that's what was going on.

10       (Attorney-client discussion.)

11          THE COURT:  All right.

12          THE DEFENDANT:  Okay.  Well, I just want to say I'm

13   trying to change my life.  I would like to do better or get

14   help.  I don't feel doing time in prison. . .  That's all I got

15   to say.

16          Thank you, sir.

17          THE COURT:  Officer Strome, does Probation have

18   anything to add?

19          PROBATION OFFICER:  No, Your Honor.

20          THE COURT:  Thank you.

21          I don't see anyone in the audience wishing to speak.

22       (Brief pause in proceedings.)

23          THE COURT:  Okay.  As I mentioned, after considering

24   the sentencing guidelines and the statute, I also look at the

25   factors set forth in a statute known as 18 U.S.C. § 3553(a),

2:18-cr-055-APG-GWF - March 1, 2019

1   and those require me to take into account the seriousness of

2   the crime you've committed, your personal history and

3   characteristics, and the need for my sentence to do several

4   things:

5        That sentence has to reflect the seriousness of the

6   crime; it's got to protect the public; the -- it has to provide

7   appropriate punishment and to try to deter you and others from

8   committing these kind of crimes, amongst other things.

9        With regard to the crime here, it is a very serious

10  offense.  Congress has put significant penalties on felons who

11  possess guns because it's a serious crime.  And it's even more

12  serious because it's not the first time you've been arrested

13  and convicted of possession of weapons, so you know you're not

14  supposed to do it and you get busted in this case and 9 days

15  later you get nailed again with a gun.  You just aren't

16  learning that you're not allowed to have them.  Protection or

17  not, you can't have them.

18       I agree with Mr. Smith, you have a lengthy criminal

19  history going back to the age of 10.  I went back and looked

20  and since the age of 19, you have been arrested or convicted

21  every year that you weren't in prison, and often multiple times

22  in any one year.  And that's just a string that's got to stop.

23  You're just getting too old for this nonsense.

24       I understand you grew up in a bad neighborhood.

25  Chicago's a tough town and they've got real bad neighborhoods

1   and I understand you grew up around that and you saw a lot of

2   it and you were involved in a lot of it, but you left that and

3   you moved to Vegas and you had a chance to start over and you

4   jumped right back into that lifestyle.  You continued on with

5   the gang.  You continued on with getting weapons and hanging

6   out with the wrong crowd and I don't know why, but you had a

7   chance for a do-over and you didn't take it.  You just

8   continued what you were doing.  If you really wanted to get out

9   of that, stop going to prison, that was your chance.

10          You got another chance again now.  Every day's a new

11  opportunity to say I'm done with that stuff, but you got to

12  take that.  Up till now you haven't, and that's very, very

13  troubling.

14          You have had warrants issued several times because you

15  didn't appear in court.  You violated probation several times.

16  You got in trouble while you were in prison several times, and

17  then I let you out on pretrial release and you beat up your

18  girlfriend, you put your newborn child in danger, you barricade

19  yourself in, SWAT's got to come to get you out.  We're lucky

20  nobody got hurt.  You could have been killed.  Your daughter

21  could have been killed.  Some police officers could have been

22  hurt or killed in the exchange of gunfire, whatever else

23  went -- was going to go down.  You created that situation.

24  Neighbors could have gotten hit with stray bullets.  You

25  created a real bad situation.  That's not the behavior and the

2:18-cr-055-APG-GWF - March 1, 2019

1  payback I was hoping when I let you out on pretrial release.

2      But I have to be cautious here because I'm not

3  sentencing you for the crime you committed and pled guilty to

4  in state court.  They pled it down to attempted burglary.  For

5  whatever reasons they had, that's the way it is and they're

6  going to deal with that.  I can't sentence you for that and I'm

7  not going to.  But I do have to take into account how you

8  behaved on pretrial release because it's indicative of the

9  way -- it's just further example of what you've been doing.

10  People give you chances, the judges give you chances and you

11  just thumb your nose at it and go right back to the crime.

12      I came into this situation leery when I read the

13  original Plea Agreement about time served and I read it and I'm

14  thinking, how the heck does this guy get timed served.  I

15  understand from the government that you agreed to withdraw

16  the -- the suppression motion and that the government took that

17  into account, and I do too.  There were reasons why the

18  government was willing to plead it down to time served.  But

19  I'm -- was troubled by it.  I'm not bound by that time served,

20  and certainly the government isn't either now based upon your

21  behavior on pretrial release.  I am just troubled because you

22  can't seem to comply with the law.

23      I clearly need to protect the public from you.  I've

24  got to do something to try to deter you from committing these

25  crimes going forward.

─2:18-cr-055-APG-GWF - March 1, 2019─

1          The Probation Office's recommendation of 21 --

2    27 months, to me, seems reasonable, but I also recognize that

3    there is some benefit to the government that you agreed to

4    waive the suppression motion, withdraw that suppression motion

5    and conveyed a benefit upon the government and the Court and

6    pleaded guilty to the charge, so I'm going to vary downward a

7    little bit from that 27-month sentence because of the

8    willingness to withdraw the suppression motion.

9          I'm going to sentence you to 21 months in custody.  I

10   think that's the appropriate amount.  I'm going to run it

11   consecutive to the state court because that is a completely

12   different case, it's a completely different situation and I

13   don't know what they're going to do over in state court, but

14   that's their decision to make but I'm going to sentence you to

15   21 months consecutive to the state court case that we'll insert

16   into the Judgment.

17          I will not impose a fine.

18          I'm going to impose 3 years of supervised release.

19   While you're on supervised release, you'll comply with the

20   standard conditions recommended by the sentencing commission,

21   plus the following additional recommendations -- or sentencing

22   conditions -- supervised release conditions, I'm sorry.

23          You must not commit another federal, state, or local

24   crime.

25          You must not unlawfully possess a controlled

2:18-cr-055-APG-GWF - March 1, 2019

1  substance.

2           You must refrain from the unlawful use of a controlled

3  substance.

4           You'll submit to one drug test within 15 days of

5  release from custody and at least two periodic drug tests

6  thereafter, not to exceed 104 tests per year.

7           You must cooperate in the collection of DNA as

8  directed by the Probation Office.

9           You must not communicate or otherwise interact with

10  any known member of the Gangster Disciples gang without first

11  obtaining the permission of the probation officer.  Nothing

12  good can happen from that.  You got to get yourself out of that

13  situation so you can stay out of prison.  It's time to start

14  over.  Take this opportunity and don't come back.

15           You'll participate in an educational services program

16  and comply with all the rules and regulations of that program.

17           You'll be subject to a warrantless search and seizure

18  requirement of your person, property, house, residence,

19  vehicle, papers, computers, and other electronic communications

20  and data storage devices.  The search can be conducted by a

21  probation officer based upon a reasonable suspicion that you

22  have violated a condition of supervision and the area to be

23  searched contains evidence of a violation.  Any search must be

24  conducted in a reasonable time and in a reasonable manner.

25           I'll ask Officer Strome to give you a copy of those

———2:18-cr-055-APG-GWF - March 1, 2019———

1  terms and conditions.

2          Let me pause here and tell you, you've got warrantless

3  search and seizure requirement, no drugs, no weapons.  If

4  somebody gets into your car and they've got drugs or weapons,

5  make them get out.  If you go to somebody's house or get in

6  their car and there's drugs or weapons, get yourself out

7  because with a warrantless search, if you're in the vicinity

8  and they search and they find drugs or weapons and you're

9  trying to explain it's not mine, you're in a tough spot.  I

10  don't want to see you get nailed for somebody else's junk, so

11  just police your own environment so you're not getting stuck.

12  All right?

13          THE DEFENDANT:  Yes, sir.

14          THE COURT:  I don't want to see you coming back on

15  another release violation.  And I'll remind you because if you

16  do violate, you could be sent back to prison, potentially for

17  up to the full amount of time of the supervised release and

18  potentially without any credit for time served while on

19  supervised release.  So please don't get yourself in that

20  situation.

21          In your Plea Agreement, you waived most of your rights

22  of appeal.  You do have some very narrow, limited rights.

23  Speak to Mr. Grasso right away so you understand your appellate

24  rights.

25          You have 14 days from the entry of Judgment in which

———2:18-cr-055-APG-GWF - March 1, 2019———

1    to file a Notice of Appeal.

2           If you can't afford an attorney for the appeal, one

3    will be paid for at the government's expense.

4           If you can't afford a copy of the transcript of these

5    proceedings, again, that will be prepared at the government's

6    expense.

7           With regard to the revocation issue, I presume it's

8    moot so I'll dismiss that.

9           Any disagreement?

10          MR. SMITH:  No, sir.

11          MR. GRASSO:  No, Your Honor.

12          THE COURT:  All right.  So I'll dismiss the revocation

13   petition as moot.

14          Mr. Grasso, does your client request a particular

15   facility to do his time?

16       (Attorney-client discussion.)

17          MR. GRASSO:  A facility in Arizona, Your Honor.  I

18   would ask to Tucson most likely.

19          THE COURT:  Okay.  I'll put due to proximity of

20   family, we'll designate Arizona, Tucson preferably.

21          MR. GRASSO:  Yes.

22          THE COURT:  Okay.  Anything else I can address for the

23   parties today?

24          MR. SMITH:  No, sir.  I think that's it, Judge.

25   Thank you.

—————2:18-cr-055-APG-GWF - March 1, 2019—————

1        MR. GRASSO:  No, Your Honor.  Thank you very much.

2        THE COURT:  All right.  We're -- defendant's remanded

3   to the custody of the Marshal's Office.

4        THE DEFENDANT:  Thank you, Your Honor.

5      (Proceedings adjourned at 9:54 a.m.)

6

7                          --oOo--

8                COURT REPORTER'S CERTIFICATE

9

10       I, Heather K. Newman, Official Court Reporter, United

11  States District Court, District of Nevada, Las Vegas, Nevada,

12  do hereby certify that pursuant to Section 753, Title 28,

13  United States Code, the foregoing is a true, complete, and

14  correct transcript of the proceedings had in connection with

15  the above-entitled matter.

16

17  DATED:  5-12-2020          _____/s/ Heather K. Newman___
                               Heather K. Newman, CCR #774
18                             OFFICIAL FEDERAL REPORTER

19  new case new case

20

21

22

23

24

25